Chris **KARRAS d/b/a Time–Out Steak House and Restaurant**, Appellant,

v.

The **STATE of South Dakota, DEPARTMENT OF REVENUE**, Appellee.

No. 16394.

Supreme Court of South Dakota.

Considered on Briefs March 23, 1989.

Decided May 31, 1989.

Bradley C. Grossenburg of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for appellant.

Timothy T. Weber, Sp. Asst. Atty. Gen., Pierre, for appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

WUEST, Chief Justice.

Chris Karras (Karras), d/b/a the Time–Out Steakhouse and Restaurant in Sioux Falls, South Dakota, appeals a circuit court judgment ordering him to pay additional sales taxes and interest because he un-

derreported his gross sales for 1980 through 1982. We affirm in part and reverse in part.

Karras owned and operated the Time-Out Steakhouse and Restaurant from 1975 until 1985. In February, 1983, the South Dakota Department of Revenue (Department) conducted a routine sales and use tax audit of Karras' books and records. This audit concerned the period from January, 1980, through December, 1982. At the start of the audit, the auditor, Laura Coome (Coome), asked Karras to produce his business records. Karras had failed to keep sales receipts, cash register tapes or sales journals, apparently adhering to the "shoe-box" method of bookkeeping. Consequently, he was able to produce only randomly kept purchase invoices.

Coome attempted to conduct the audit, using these invoices. She was unable to do so, however, because their accuracy and completeness could not be verified. Thereafter, Coome obtained Karras' bank statements and federal income tax returns. Using these records, she determined that Karras' cost of goods sold for 1982 was $378,000. Coome estimated Karras' cost of goods sold to be forty percent of his gross sales. She then determined that Karras' gross sales for 1982 amounted to $946,205. After verifying the accuracy of the gross sales for 1982,[1] Coome also determined Karras' gross sales for 1980 and 1981. These totals also were based upon Karras' cost of goods sold as indicated by his federal income tax returns for the respective years.

Based upon the aforementioned calculations, Coome found that Karras had underreported his gross sales for 1980 through 1982. She then assessed against Karras additional sales and use taxes in the amount of $57,113 as well as interest through March, 1985, in the amount of $46,211. On June 23, 1986, the Department, pursuant to SDCL 10–45–37, issued a jeopardy assessment in the amount of the tax deficiency and interest—$103,324. A notice of tax lien subsequently was filed against Karras' property.

Karras contested the audit and was granted an administrative hearing. The Secretary of the Department upheld the audit and Karras appealed to the circuit court. The circuit court affirmed the Secretary's decision and ordered Karras to pay the tax deficiency and interest. Karras now appeals to this court, asserting that (1) the Department's method of determining the amount of sales taxes due was arbitrary and unreasonable; (2) the statute of limitations bars collection of the sales tax for the first quarter of 1980; and (3) he has paid in full the sales taxes for the period of 1980 through 1982.

Our standard of review in matters, such as this, which concern an appeal from an administrative agency's decision is well-established. We review the record to determine whether the agency's findings of fact are clearly erroneous in light of all the evidence contained therein and whether its conclusions of law, which are freely reviewable, are affected by mistake of law. SDCL 1–26–36; *Hanson v. Penrod Const. Co.*, 425 N.W.2d 396, 397 (S.D.1988); *Strackbein v. Fall River Cty. Hwy. Dept.*, 416 N.W.2d 270, 272 (S.D.1987); *Permann v. Dept. of Labor, Unemp. Ins. D.*, 411 N.W.2d 113, 115–17 (S.D.1987).

In his first contention, Karras essentially challenges the sufficiency of the evidence upon which was based the Department's

1. Coome first determined Karras' gross sales for 1982 because his records for that year were more complete than those for either 1980 or 1981. The accuracy of the 1982 figure was verified by two additional methods based upon the number of meals served each day and the total deposits into Karras' business and personal bank accounts.

Under the "meals served" method, Karras' gross sales for 1982 amounted to $1,017,450. Coome arrived at this figure by estimating that the restaurant served 700 meals each day and that the average cost of a meal was $4.75. Meals were served six days per week for fifty-one weeks during 1982. These figures were multiplied to arrive at the amount of gross sales (700 × $4.75 × 6 × 51 = $1,017,450).

The "total deposits" method involved compiling the deposits into Karras' personal bank account and that of the restaurant. Checks drawn upon the restaurant account and deposited in Karras' personal account were excluded. This method produced a 1982 gross sales figure of $929,800.

finding of fact that the audit revealed a sales tax deficiency. Karras claims that he provided adequate records to enable Coome to conduct the audit and that the methods used to determine and verify his gross sales were baseless. We find his argument illaudable.

It cannot be disputed that Karras was subject to the sales tax provisions contained in SDCL ch. 10–45. Consequently, he was required to maintain accurate records of his sales. SDCL 10–45–45 provides:

> Every person subject to tax under this chapter shall keep records and books of all receipts and sales, together with invoices, bills of lading, copies of bills of sale, and other pertinent papers and documents. Such books and records and other papers and documents shall, at all times during business hours of the day, be subject to inspection by the secretary of revenue or his duly authorized agents and employees to determine the amount of tax due. Such books and records shall be preserved for a period of three years unless the secretary of revenue, in writing, authorized their destruction or disposal at an earlier date.[2]

We believe that the purpose of this statute is clear. SDCL 10–45–45 mandates keeping books and records of sales and receipts so that the Department may verify the accuracy of sales taxes collected by a retailer and remitted to the state. Failing to keep adequate records does not preclude proper verification of sales taxes by the Department, but such verification certainly is less precise. In circumstances where a retailer's books and records are found to be insubstantial, the Department may resort to other available information and auditing techniques to determine whether a sales tax deficiency exists. *See City of Lennox v. Wendell,* 278 N.W.2d 635 (S.D.1979).

In *City of Lennox,* this court was faced with a situation which was similar to that in the present case. There, the Department audited a city-owned bar to determine the sales taxes owed to the state.

Because the bar's records were too incomplete to serve as a basis for the audit, the Department reconstructed the gross sales from information indicating the bar's cost of goods sold and previous profit margins on off- and on-sale beer and liquor. We approved this method of extrapolating gross sales, holding that it was "reasonable under the circumstances and based upon substantial evidence." *Id.* at 637.

The record in the present case shows that Karras failed to keep adequate books and records upon which an audit could be based. When initially asked to produce such records, Karras was able to provide only a box of randomly kept purchase invoices. Coome attempted to proceed with the audit by contacting Karras' suppliers in order to verify these invoices. Because the information she received from the suppliers was incomplete, Coome determined that an audit based upon said invoices would be inaccurate. She then obtained Karras' bank statements and federal income tax returns. These records enabled her to determine Karras' cost of goods sold. As previously indicated, Coome estimated Karras' costs of goods sold to be forty percent of his gross sales. This percentage was considered to be a restaurant industry standard. In addition, Karras advised Coome that his cost of goods sold was in the range of thirty-seven to forty-two percent. Using Karras' cost of goods sold for the years in question, Coome then determined his gross sales for each year.

Coome verified Karras' cost of goods sold for 1982 by using the aforementioned two methods. In regard to the "meals served" method, Coome testified at the hearing that Karras originally told her that his restaurant served 700 to 800 meals per day. Although Karras now claims that this figure was substantially lower, he failed to produce at the hearing his records which indicated the number of customers served each day. Coome's estimate of the average cost of a meal was based upon her own dining experiences at the Time–Out

---

**2.** Failing to keep books and records or refusing to exhibit them in accordance with SDCL 10– 45–45 constitutes a Class 1 misdemeanor. SDCL 10–46A–13.1(3).

Steakhouse and Restaurant and review of the menu.

Karras also challenges the "total deposits" method, claiming that Coome failed to confirm the source of deposits into his bank accounts. He, however, offered no documentation showing that the funds taken into account by Coome originated from a source other than the restaurant.

We note that Coome had considerable experience in auditing operations similar to that of Karras. In light of Karras' insubstantial books and records, we believe that she utilized the best information available to her in determining and verifying his gross sales. In addition, she appeared at the hearing so that her calculations could be explained to the hearing officer and challenged by Karras through cross-examination. Coome's methods of ascertaining and verifying Karras' gross sales, therefore, satisfied the minimum standard of reasonableness and were sufficient to determine Karras' sales tax deficiency. *See City of Lennox,* 278 N.W.2d at 637. *See also Smith v. Dept. of Revenue,* 143 Ill. App.3d 607, 97 Ill.Dec. 846, 493 N.E.2d 653 (1986). It appears that the record contains sufficient evidence to support Coome's determinations. Consequently, we cannot say that the Department's finding of fact regarding said deficiency was clearly erroneous. To hold otherwise would reward Karras for his failing to keep business records as the law requires.

■ In his second contention, Karras argues that if the sales tax assessment is upheld, the Department's collecting the taxes due for the first quarter of 1980 is barred by the six-year statute of limitations. We agree.

Because there is no express statute of limitations regarding sales taxes, we apply SDCL 15–2–13, which provides, in pertinent part:

> Except where, in special cases, a different limitation is prescribed by statute, the following civil actions ... can be commenced only within six years after the cause of action shall have accrued:
>
>    *     *     *     *     *     *

> (2) An action upon a liability created by statute....

The Department argues that Karras' failing to report his entire gross sales was fraudulent. It correctly asserts that the statute of limitations on an action based upon fraud does not begin to run "until the aggrieved party discovers, or has actual or constructive notice of, the facts constituting the fraud." SDCL 15–2–3; *Tri–State Refining v. Apaloosa Company,* 431 N.W. 2d 311, 314 (S.D.1988). Under this premise, the Department's cause of action would not have accrued until February, 1983, when the audit was commenced. Although we find merit in the Department's argument, we note that neither it nor the circuit court set forth a finding of fact that Karras' conduct was fraudulent. In the absence of such a finding, we cannot assume that fraud was present. To do otherwise would be to engage in the fact finding process, thereby assuming the Department's role.

■ In the absence of a finding of fraud, we believe that the Department's cause of action for the payment of the sales taxes in question did not accrue until they became delinquent. *See Amerada Hess Corp. v. Conrad,* 410 N.W.2d 124 (N.D.1987); *Lexington–Fayette U. Cty. Gov. v. Abney,* 748 S.W.2d 376 (Ky.App.1988); *Westinghouse Elec. Corp. v. King,* 678 S.W.2d 19 (Tenn. 1984), *appeal dismissed,* 470 U.S. 1075, 105 S.Ct. 1830, 85 L.Ed.2d 131 (1985); 72 Am. Jur.2d *State and Local Taxation* § 877 at 176 (1974). SDCL 10–45–27, as it existed in 1980, required that sales taxes be paid "on or before the last day of the month following each quarter of the year." Consequently, the sales taxes for the first quarter of 1980 became delinquent on May 1, 1980. It was on this date that the six-year statute of limitations began to run. The Department filed a notice of tax lien against Karras' property on July 8, 1986. In regard to the sales taxes for the first quarter of 1980, it is obvious that the Department failed to commence within the limitations period its action to collect these

taxes. We therefore hold that it is barred from doing so now.[3]

In his third contention, Karras claims that he paid the sales taxed in full for 1980 through 1982. The sales taxes paid by Karras during this period were based on his erroneous calculation of gross sales.[4] Our holding which regards the Department's audit methods and determination of a sales tax deficiency disposes of this issue.

Accordingly, we affirm the circuit court's decision with one exception, namely, its holding that the Department's collecting the sales taxes due for the first quarter of 1980 is not barred by the six-year statute of limitations contained in SDCL 15-2-13(2).

All the Justices concur.

SABERS, Justice, deeming himself disqualified, did not participate.

---

3. The circuit court held that the statute of limitations had not run because the statutory obligation to preserve records for three years extended the limitations period. We find no basis for this holding.

4. In 1980, 1981 and 1982, Karras reported gross sales of $621,951, $635,451 and $616,670, respectively.