**William JIRICEK, Plaintiff and Appellee,**

v.

**WOONSOCKET SCHOOL DISTRICT # 55–4, Defendant and Appellant.**

**Nos. 17491, 17497.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 14, 1992.

Reassigned May 19, 1992.

Decided July 22, 1992.

Rehearing Denied Aug. 25, 1992.

David R. Gienapp of Arneson, Issenhuth & Gienapp Madison, for plaintiff and appellee.

Richard D. Hagerty, Yankton, for defendant and appellant.

MILLER, Chief Justice (on reassignment).

Woonsocket School District #–55–4 (District) appeals from the circuit court's judgment ordering District to pay $23,472.25 to the South Dakota Retirement System (SDRS) on behalf of William Jiricek (Jiricek), District's former superintendent of schools. We reverse in part and affirm in part.

### FACTS

Jiricek taught school in Greenwood, South Dakota, from 1961—1963. At that time, public school teachers were covered by the South Dakota Teachers' Retirement System (TRS). SDCL ch. 13–45 (repealed by 1974 S.D.Sess.L. ch. 35, § 80). The retirement plan was voluntary; however, Jiricek never joined during that time period.

On July 1, 1964, SDCL 13–45–21 (repealed by 1974 S.D.Sess.L. ch. 35, § 80) made participation in TRS mandatory for all teachers entering employment after that date. Teachers employed before that date did not have to participate. On July 1, 1967, a public employees' retirement system was established. SDCL 3–12–3 (repealed by 1974 S.D.Sess.L. ch. 35, § 80). Teachers who were members of TRS were excluded from that plan. In 1974, all previous public employee retirement systems were consolidated and participation became mandatory. *See* SDCL 3–12–46 and 3–12–62. This plan became known as the South Dakota Retirement System (SDRS).

Jiricek left South Dakota in 1963 to take a teaching job in Montana. In September, 1967, he returned to South Dakota to teach in the Woonsocket School District. At that time, he *intentionally* did not join TRS because he thought it would be tough to support his family on his salary. This somehow occurred even though participation was legally mandatory.

In 1971, after he had obtained a master's degree in school administration he became the Woonsocket Superintendent of Schools. He remained superintendent until 1976.

When he became superintendent, *he again intentionally chose not to participate in the retirement system.* As superintendent, he was responsible for administrating all of District's payroll deductions, including retirement contributions. SDCL 13–45–31 (repealed). He stated that he chose not to participate (and prevented the payroll deductions) because he felt this change would not be popular with the school board. Additionally, during his testimony, he admitted that he had *no desire to participate* in the retirement plan prior to 1974, because it was not, in his opinion, a very good system.

In 1974, when participation became mandatory for *all* public employees, Jiricek began making contributions and filed a Notice of Participation in SDRS. On this form, he was required to explain why his participating date (7–1–74) was later than his employment date (9–1–67). Although he obviously knew otherwise, he wrote, "participation was optional."

In 1976, Jiricek moved to Madison, South Dakota, to become the superintendent of schools for Lake Central School District. *In 1979,* Jiricek contacted District and the Department of Labor (which at that time administered SDRS) in an attempt to receive credit for the seven-year-period (1967–1974) when he made no contributions. In response to his inquiry, SDRS informed Jiricek that he could purchase the years of credited service; however, it would cost him $18,725.00 to purchase these years. At the time of trial, this amount had increased to $23,472.25.

Jiricek was dissatisfied with SDRS' recommendation that he purchase the seven years' credited service and therefore he tried to get a cash settlement from District. Jiricek wrote to District: "The amounts being discussed here would well run into several tens of thousands of dollars at a retirement age especially when age 55 is considered.[1] With the rapid changes in the economy in the past couple of years I do not feel that I can afford to write these

years off, nor would it be fair to my family to do so."

Later, he tried to get SDRS to support legislation that would secure his credit for the seven years. In a memo dated February 13, 1986, from the deputy administrator of SDRS to the administrator, it was written: "He [Jiricek] wanted SDRS to slip an amendment on one of our bills to mandate the employer to make the payments and then settle with the ex-employee.... [W]e said no." All of Jiricek's collateral efforts failed and, in February, 1990, he commenced this suit.

The trial court found that District was obligated to pay $23,472.25 to SDRS on Jiricek's behalf and ordered District to pay that amount to SDRS pursuant to SDCL 3–12–83's "buy-back" provision. This amount represented 7½% of Jiricek's current salary of $51,520, multiplied by the number of years in which no contributions were made (seven). This calculation was made pursuant to SDCL 3–12–83. The trial court then deducted $3,434 which was equivalent to the amount which would have been deducted from Jiricek's salary had the required contributions been made. (The parties do not dispute these calculations.)

District argues that Jiricek's claim was barred by the six-year statute of limitations set forth in SDCL 15–2–13(2). Jiricek, on the other hand, argues that since he has not yet retired the statute of limitations has not yet begun to run. In his notice of review, Jiricek argues that District should be compelled to pay the entire amount of the unpaid contributions, both the employer's share ($23,472.25) and the employee's share ($3,434.00), for a total of $26,906.25.

## DECISION

■ The statutes creating SDRS do not include any limitation period regarding contributions which an employer fails to make. SDCL 15–2–13 applies when no limitation period is proscribed by statute. Thus, SDCL 15–2–13(2)[2] sets forth the applicable

---

**1.** Apparently, he is considering early retirement. *See* SDCL 3–12–106 and 3–12–47(35).

**2.** SDCL 15–2–13(2) provides:

Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of

statute of limitations, which is six years after the cause of action accrued. The crucial issue here is *when Jiricek's cause of action accrued.*

Jiricek contends that his cause of action does not accrue until he retires. He argues that SDCL 3–12–83 illustrates the legislature's intent that a member be able to "buy back" into the system until he retires or is no longer a contributing member. We disagree with his contention because SDCL 3–12–83 is totally irrelevant to the question of when Jiricek's cause of action accrued. SDCL 3–12–83 provides:

A current contributing member of the system may receive credited service by election to make, or have made on his behalf, contributions, based on the higher of his current compensation, or his final compensation calculated as if he retired on the date of election, at seventy-five percent of twice the member rate, for each year of service for which he wishes to receive credit, if:

(1) The current contributing member of the system could have established credit for any South Dakota public service by making contributions under this chapter or any prior law; or

(2) The current contributing member was not permitted to establish credit for any South Dakota public service.

The amount of the credited service and the rate of contribution shall be at class A rates unless the service for which credit is sought was rendered as a class B member in which case class B rates shall apply. If a participating unit has failed to pay employer or member contributions to the system on behalf of a member as required under this chapter or under any predecessor system consolidated pursuant to § 3–12–46, the amount due the system shall be calculated in accordance with this section.

While it is true that an *employee* may "buy back" into the system until retirement (*see* SDCL 3–12–84 and 3–12–87), this does not necessarily imply that his cause of action against his employer for failing to make contributions does not accrue for purposes of the statute of limitations until retirement, *especially when he has known all the pertinent facts since at least 1979.*

Furthermore, to accept Jiricek's argument would permit him, and others like him, to defer their actions indefinitely. In Jiricek's case, he was fifty-five years old at the time of trial. Jiricek could wait ten more years, until he turns sixty-five (assuming he retires at sixty-five), plus another six years for the statute of limitations to run before his claim is time-barred. This does not promote the purposes of the statute of limitations, and it would also increase the financial burden suits like this would create for public entities.

■ Jiricek has a remedy; he can purchase the years of service at his own expense. There is no reason why the district should have to purchase it on his behalf. Jiricek was fully aware of his rights in 1979, and probably even earlier. He should not now be allowed to profit from the choices he made many years ago. Statutes of limitation are designed to protect parties from stale claims and from those who sleep on their rights. *Burke v. Foss*, 334 N.W.2d 861 (S.D.1983); *Chipperfield v. Woessner*, 84 S.D. 13, 166 N.W.2d 727 (1969). Accordingly, Jiricek's cause of action is barred by the statute of limitations set forth in SDCL 15–2–13(2).

We reverse in part and affirm the issue raised by notice of review.

HENDERSON and SABERS, JJ., concur.

WUEST and AMUNDSON, JJ., dissent.

WUEST, Justice (dissenting).

The sole issue raised by District on appeal was whether Jiricek's claim for retirement system contributions under the "buy-back" provisions of (SDRS) is barred by the statute of limitations set forth in SDCL 15–2–13.

. . . .

real property can be commenced only within six years after the cause of action shall have accrued:

(2) An action upon a liability created by statute[.]

Under the law as it existed when contributions should have been paid to the Teacher's Retirement System on behalf of Jiricek, contributions from his salary were to be deducted and contributions by the District were to be paid to the Teacher's Retirement System. *See* SDCL ch. 35–45 (repealed). The contributions owed by Jiricek and the District were an obligation to the Teacher's Retirement System.[1] The law, as it then existed, required the trustees to certify any failure or refusal to pay any amount or amounts due the system to the State Treasurer, and the State Treasurer was directed to withhold and deduct the amount or amounts of such delinquency from payment of state moneys due to the public school employer. SDCL 13–45–38 (repealed). Apparently, the trustees never made any certification to the State Treasurer, so the State Treasurer did not withhold the contributions from state moneys due the Woonsocket District.

Jiricek sued the District to recover the "buy-back" costs for the period in question.[2] An issue in the trial court and the sole one on appeal to this court, is whether the statute of limitations ran against Jiricek pursuing recovery from the District via the "buy-back" provisions of SDRS. It may be questionable whether the "buy-back" provision of SDRS provides a cause of action to remedy Jiricek's predicament; *however, the trial court held it did, and the only issue appealed is the "statute of limitations" defense.*[3] Clearly this is no defense to the "buy-back" provisions of SDRS.

In determining when a cause of action based upon a liability created by statute accrues, we must examine the statute or statutes which create the liability. *See Karras v. State, Dept. of Revenue,* 441 N.W.2d 678, 681 (S.D.1989).[4] District contends the cause of action accrued after each paycheck was issued when the District failed to make the required contributions or, at the latest, when Jiricek left the District. This position is inconsistent with the statutory scheme involved here.

First, SDCL 13–45–21 (repealed) provided that membership in the retirement system included any teacher who entered public employment after June 30, 1964 (which includes Jiricek). The current SDRS continues this scheme. Participation became mandatory for all state employees, with a few irrelevant exceptions, in 1974. SDCL

---

1. It is difficult to sympathize with Jiricek because he was the Superintendent and should have enforced the law on behalf of the district. Perhaps estoppel would have been a proper defense, but that issue has not been urged, briefed, or argued in this appeal. Nor should we be making bad law on the statute of limitations. The next case may involve an innocent party.

2. At this juncture, I believe it is important to emphasize this proceeding was not a mandamus action to compel this District to pay the delinquent contributions nor was it an action to recover the contributions. It was an action under the "buy-back" provisions of SDCL first enacted in 1974 and by subsequent legislation extended to a member as long as he or she is currently contributing to the system (see footnote 5 for further clarification).

3. There was a notice of review raised by Jiricek—whether District was obligated to pay Jiricek's portion of the "buy-back" contribution. I agree with the trial court it was not. *State Employee's Ass'n. v. Belknap Cty.,* 122 N.H. 614, 448 A.2d 969, 975 (1982). *Compare* Senate Bill 12, § 4 as introduced *with* 1979 S.D.Laws ch. 30 (omitting § 4 which required employers to pay the member's contribution).

4. As a general proposition, no cause of action accrues until some wrongful act or omission produces an injury in the form of an invasion of a legally protected interest, *see Karras,* 441 N.W.2d at 681 (Department of Revenue's cause of action for payment of past-due sales taxes accrued when they became delinquent); *Shoenrock v. Tappe,* 419 N.W.2d 197, 199–200 (S.D. 1988) (cause of action for negligent title examination accrues at time the attorney provides the erroneous information); *Nichols v. Ach,* 233 Neb. 634, 447 N.W.2d 220, 225 (1989); *Scott v. City of Sioux City,* 432 N.W.2d 144, 147 (Iowa 1988); *Bonhiver v. Graff,* 311 Minn. 111, 248 N.W.2d 291, 296, 92 A.L.R.3d 371 (1976), or until a party is entitled to a legal remedy, *see Employers Ins. of Waussau v. Smith,* 154 Wis.2d 199, 453 N.W.2d 856, 869 (1990); *Wittmer v. Ruegemer,* 419 N.W.2d 493, 495–96 (Minn.1988); *Smith v. Department of Treasury,* 163 Mich.App. 179, 414 N.W.2d 374, 376 *cert. denied,* 486 U.S. 1023, 108 S.Ct. 1996, 100 L.Ed.2d 227 (1987); *Sandbulte v. Farm Bureau Mut. Ins. Co.,* 343 N.W.2d 457, 462 (Iowa 1984). These rules do not answer the question before us; however, they do serve to focus the analysis.

3–12–62 (1985). In addition, the contributions to the SDRS were mandatory at all times relevant to this appeal. SDCL 13–45–31 (repealed).

Secondly, SDCL 3–12–83 provides a "buy-back" procedure. This "buy-back" provision permits a "current contributing member"/employee to "buy back" into the system when contributions have not been made. It applies specifically when a "participating unit has failed to pay employer or member contributions to the system on behalf of a member as required under [Chapter 23–12] or under any predecessor system." *Id.* This section illustrates the Legislature's intent that a member be able to "buy back" into the system until he retires or is no longer a "current contributing member."[5] Jiricek is still employed by a school district, is still making contributions, and is therefore still a "current contributing member" of the SDRS. *See* SDCL 3–12–47(31) (1991 Supp.). The majority's holding that the statute of limitations began to run after Jiricek became aware of "all the pertinent facts" is inconsistent with SDCL 3–12–83's "buy-back" provision.

The majority's position is also inconsistent with existing caselaw in two jurisdictions. It appears only two jurisdictions have considered this precise issue. The Supreme Court of Ohio addressed the issue of what effect its statute of limitations had upon its mandatory Public Employees Retirement System. *State ex rel. Teamsters v. City of Youngstown,* 50 Ohio St.2d 200, 364 N.E.2d 18, 20 (1977). The *Youngstown* court first noted that "[n]ormally a cause of action does not accrue until such time as the infringement of a right arises. It is at this point that the time within which a cause of action is to be commenced begins to run.... [W]hen one's conduct is not presently injurious a statute of limitations begins to run against an action for consequential injuries resulting from such act only from the time that actual damage ensues." *Id.* Because an employee's right to receive benefits from the system could not accrue until such time as the employee elected to retire, the court held the applicable statute of limitations did not begin to run until that time. *Id.* at 20–21.[6] The court's conclusion was based on: (1) its perception that in making the performance of the employer's duty to make contributions mandatory, "it was the evident purpose of the [legislature] to avoid hopeless confusion and to maintain the security of the retirement system," *Id.* at 21, and (2) on the fundamental rule that pension statutes are to be liberally construed to promote the legislative purpose and objective. *Id.* *See also Golinvaux v. City of Dubuque,* 439 N.W.2d 196, 197 (Iowa 1989); *Carstensen v. Board of Trustees,* 253 N.W.2d 560 (Iowa 1977).

The only other jurisdiction which has addressed this issue is New Hampshire. *State Employees' Ass'n. v. Belknap Cty.,* 122 N.H. 614, 448 A.2d 969 (1982) involved a retirement system in which an employee's participation was mandatory if the governing board of the political subdivision of the state involved had elected to have its officers and employees participate in the system. Belknap County had elected to participate, but its commissioners failed to make contributions on behalf of most of its employees. *Id.* at 971.

---

5. This legislative intent is further shown by amendments to SDCL 3–12–83. In 1974, when the SDRS was first enacted, a member's right to "buy back" credited services lapsed two years after passage of the act. 1974 S.D.Laws ch. 35, § 40. In 1977, SDCL 3–12–83 was amended to provide that a member's right to "buy back" credited service lapsed in the event the member failed to make an election prior to July 1, 1980 or within two years of entering the system, whichever was earlier. 1977 S.D.Laws ch. 28, § 8. In 1980, this lapse feature was repealed indicating a legislative intent that a contributing member be permitted to "buy back" credited service so long as he or she remains a "current contributing member." *In 1980, SDCL 3–12–83 was also amended so that its provisions applied whenever a "participating unit" (employer) failed to make required employer or member contributions.* 1980 S.D.Laws ch. 31, § 4.

6. This did not mean the plaintiffs had no cause of action because the action was "founded in mandamus, premised on a clear legal duty imposed by [statute]" and not an action for damages. *Id.*

The employees filed a petition for a declaratory judgment that the county be required to pay contributions which should have been made during the period of non-compliance. The county, prior to trial, filed a motion to dismiss, claiming the statute of limitations barred the action. The trial court denied this motion. *Id.* at 972. The trial court ordered the county to permit its employees to "buy back" all prior years of creditable service. The county was required to pay its share of the "accrued unfunded liability" for the members' past years of service.

The New Hampshire Supreme Court affirmed. The court noted benefits were payable only upon a member's death or retirement. The court then held that "[a]lthough employees obtain a vested right to benefits upon the commencement of their permanent employee status, the statute of limitations does not begin to run until the time payments become due—the time of death or retirement." Thus, the state's six year statute of limitations would only bar claims of employees whose suits were not commenced within six years after their death or retirement. *Id.* at 973. The *Youngstown* and *Belknap Cty.* cases are directly on point and are logical given the framework of the SDRS.

The majority opinion fails to acknowledge or address this persuasive authority. District seeks to distinguish *Youngstown* by pointing out that Jiricek left the District more than six years prior to the commencement of this suit. All of the *Youngstown* claimants were currently employed by the same employer that failed to make contributions. *Youngstown*, 364 N.E.2d at 19. However, this "distinction" ignores the fact that Jiricek is still a contributing member of the SDRS and, as such, has a right to "buy back" prior service credit. SDCL 3-12-83.

The majority holding that the statute of limitations bars Jiricek's claim against the District six years after he became aware of "all the pertinent facts" interferes with the operation of the SDRS violating the general rule that pension statutes are to be liberally construed to promote the legislative

purpose and objective. *Golinvaux*, 439 N.W.2d at 197; *Youngstown*, 364 N.E.2d at 21. Furthermore, since Jiricek is not entitled to any benefits until he retires, he suffered no adverse effect on any legal interest when the District failed to make the mandatory contributions on his behalf. Jiricek's interests will only be adversely effected when he retires because the payments he receives will be smaller than they would have been had the District made the required contributions. *See Youngstown*, 364 N.E.2d at 20–21. Thus, Jiricek's cause of action does not accrue for purposes of the statute of limitations until he elects to retire. *Id.* Therefore, I would hold that the trial court was correct in concluding Jiricek's claim was not barred by the statute of limitations.

AMUNDSON, J., joins this dissent.