704 S.E.2d 738 (2010)
Rodney A. MYERS and Diane M. Myers, Petitioners Below, Appellees
v.
WEST VIRGINIA CONSOLIDATED PUBLIC RETIREMENT BOARD, Respondent Below, Appellant
Richard H. Burton, Petitioner Below, Appellee
v.
West Virginia Consolidated Public Retirement Board, Respondent Below, Appellant.
Nos. 35470, 35507.
Supreme Court of Appeals of West Virginia.
Submitted September 22, 2010.
Decided November 22, 2010.
*742 Lenna R. Chambers, Esq., Bowles Rice McDavid Graff & Love LLP, Charleston, WV, for Appellant West Virginia Consolidated Public Retirement Board.
G. Thomas Smith, Esq., Kristen D. Antolini, Esq., Smith, McMunn & Glover, PLLC, Clarksburg, WV, for Appellees Rodney A. Myers and Diane M. Myers.
John J. Polak, Esq., Atkinson & Polak, PLLC, Charleston, WV, for Appellee Richard H. Burton.
PER CURIAM:
In this consolidated appeal,[1] the West Virginia Consolidated Public Retirement Board ("the Board") contends that the two circuit courts below erred in finding that the two Appellees, each former West Virginia State employees and members of the Public Employee Retirement System ("PERS"), are entitled to include the amount of their lump sum payments for unused annual leave time in the calculation of their final average salaries. Because the Circuit Court of Kanawha *743 County, West Virginia, erroneously interpreted this Court's prior precedent concerning the presumption of detrimental reliance granted to longtime State employees in considering their rights to certain retirement benefits, and because both circuit courts below should have deferred to the factual findings of the Board regarding actual detrimental reliance, the Court reverses the circuit courts' rulings and reinstates the decisions of the Board in these two consolidated cases.
As a separate issue, Appellee Rodney A. Myers ("Mr. Myers") raises a cross-assignment of error, alleging that the Circuit Court of Lewis County, West Virginia, erred in affirming the Board's refusal to reinstate service credit for two months of work performed by Mr. Myers in the summer of 1972. The Board, however, did not err in this decision and the Court affirms the Circuit Court of Lewis County's ruling on the cross-assignment of error.

I. FACTS AND PROCEDURAL HISTORY
Because each of the two cases consolidated for the purposes of this appeal has a distinct set of facts, the factual and procedural history of each case is addressed separately.[2]

A. Appellees Rodney and Diane Myers
Mr. Myers worked as a civil engineer for the West Virginia Department of Transportation, Division of Highways ("DOH") for over thirty years. He retired effective January 1, 2008, and now receives a monthly retirement payment from the PERS, of which he is considered to be a "member." At the time of his retirement, Mr. Myers had accumulated 512 hours of unused annual leave. Pursuant to West Virginia Code § 5-5-3 (2005), Mr. Myers requested and received a lump sum payment for those unused hours, which totaled $17,490.00. Also pursuant to that statute, no retirement system contributions were withheld from this lump sum payment.
Following his retirement, Mr. Myers contacted the Board, which is charged with administering the PERS, and requested that his retirement benefits be recalculated. Specifically, he asked that the Board include the amount of the lump sum payment for unused annual leave in his final average salary calculation, which is used to establish a PERS member's actual pension payments. Mr. Myers further requested that the Board apply the recalculation retroactively with interest.
As will be explained more fully herein, the version of West Virginia Code § 5-5-3 in effect at the date of Mr. Myers's retirement specifically forbids the inclusion of annual leave lump sum payments in a PERS member's final average salary calculation. Mr. Myers, however, based his request on a 1988 amendment to that section of the Code, which was in effect for approximately one year, and which permitted the inclusion of annual leave lump sum payments in the final average salary calculation. Mr. Myers had been employed by the State for approximately twelve years prior to the 1988 amendment, and then continued to be employed by the State for approximately twenty years after this section of the Code was amended again to repeal this benefit.
After being notified by the Board's staff that it was denying his request to include the lump sum payment for his unused annual leave hours in his final average salary calculation, Mr. Myers appealed and a Board hearing officer conducted an administrative hearing. Before the hearing officer, Mr. Myers testified that he was approximately thirty-three-years-old when the 1988 amendment took effect and that he was not eligible for retirement at that time. Mr. Myers explained that he knew of the 1988 amendment when it was enacted because many of his fellow employees elected to take early retirement at that time and, thus, the new benefit was a topic of discussion. He further testified that he could not recall when he became aware of the 1989 amendment and its effective repeal of the 1988 amendment. He admitted that no one from the Board had ever represented to him that he would be entitled to include the lump sum of his unused annual leave time in his final salary calculation. He *744 testified, however, that because civil engineers are in high demand, he had received other job offers throughout the duration of his career, and often the other employers had offered him a higher salary. He nevertheless decided to remain employed by the State because of the benefits afforded State employees, including the pension plan.
On May 20, 2008, the hearing officer issued a "Recommended Decision" denying Mr. Myers's request, which the PERS Board of Trustees adopted at meeting held on September 3, 2008. Mr. Myers then appealed the Board of Trustees's decision to the Circuit Court of Lewis County. He was joined in his appeal by Appellee Diane M. Myers, his wife and the designated beneficiary of his PERS benefits. After considering briefs and oral argument, the circuit court ruled in favor of Mr. and Mrs. Myers on this issue, ordering the Board to include Mr. Myers's lump sum payment for unused annual leave in the calculation of his final average salary. It is from this order of the Circuit Court of Lewis County, entered on July 2, 2009, that the Board now appeals.

B. Appellee Richard Burton
Appellee Richard H. Burton ("Mr. Burton") worked for the State of West Virginia for over thirty-two years, first with the DOH, and then with the West Virginia Bureau of Employment Programs, Unemployment Compensation Division. Like Mr. Myers, when Mr. Burton retired effective February 1, 2005, he had accumulated a significant amount of unused annual leave. Also like Mr. Myers, he requested and received a lump sum payment as compensation for those unused hours. Specifically, Mr. Burton received $12,050.29, from which no retirement system contributions were withheld.
Following his retirement, Mr. Burton similarly requested that the Board include the amount of his lump sum payment in the calculation of his final average salary. Like Mr. Myers, he too based his request on the 1988 amendment to West Virginia Code § 5-5-3. Mr. Burton had worked for the DOH for approximately fifteen years when the 1988 amendment came into effect, and he continued to work for the DOH for approximately sixteen years after it was effectively repealed. Mr. Burton was not eligible for retirement during the period in which the 1988 amendment was in effect.
As with Mr. Myers, the Board's staff refused Mr. Burton's request to include the lump sum payment in his final average salary calculation, and Mr. Burton appealed to a Board hearing officer. At an administrative hearing conducted on July 7, 2006, Mr. Burton testified that he was aware of the 1988 amendment when it was enacted because, in his position as an administrative assistant, he prepared the paperwork for "a lot of the individuals who did take advantage of that period." He testified that he was not aware of the 1989 amendment to the statute, however. Furthermore, Mr. Burton testified that he had relied on being able to participate in the PERS in making his decision to work for the State, and that he had foregone other employment opportunities in order to remain employed with the State.
On September 29, 2006, the hearing officer issued a "Recommended Decision" denying Mr. Burton's request. The PERS Board of Trustees adopted that recommendation on October 26, 2006, resulting in a final order. Mr. Burton then filed a petition for appeal of the Board of Trustees's final decision in the Circuit Court of Kanawha County. After considering the parties' briefs, the circuit court issued a final order on August 5, 2009, reversing the Board's decision, and directing the Board to recalculate Mr. Burton's final average salary to include his annual leave lump sum payment. The circuit court further ordered that the recalculation be applied retroactively with interest. The Board now appeals from this final order.

II. STANDARD OF REVIEW
In considering an appeal of a circuit court's review of an administrative decision, both this Court and the circuit court below are subject to the same standards, as set forth in the West Virginia Administrative Procedures Act:
The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the *745 agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedures; or
(4) Affected by other error of law; or
(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
W. Va.Code § 29A-5-4(g) (2007). In other words,
[o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va.Code § 29A-5-4[(g)] and reviews questions of law presented de novo; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.
Syl. Pt. 1, Muscatell v. Cline, 196 W.Va. 588, 474 S.E.2d 518 (1996).
Here, the Board contends that the circuit courts erred in reversing the Board's administrative decisions, by erroneously applying the relevant case law and failing to defer to the Board's findings of fact. This Court, therefore, reviews the circuit courts' legal conclusions de novo and reviews the factual findings by the Board for clear error. See id; W. Va.Code § 29A-5-4(g).

III. DISCUSSION

A. The Board's Assignments of Error
The primary issue before the Court in this consolidated appeal is whether Mr. Myers and Mr. Burton (jointly "the Appellees") are entitled to receive the benefit of a legislative modification to the PERS which was in existence for approximately one year in the middle of their respective tenures as State employees. Specifically, the Board contends that both circuit courts erred in ruling that the Appellees are entitled to a benefit afforded to PERS participants by the 1988 amendment to West Virginia Code § 5-5-3, given that the Legislature effectively repealed that benefit in 1989. In granting each Appellee the benefit of the 1988 amendment, both circuit courts relied on Booth v. Sims, 193 W.Va. 323, 456 S.E.2d 167 (1995), in which this Court explained that State employees who substantially participate in a public employee retirement pension plan have a constitutionally protected property interest in the plan's benefits. Resolution of this issue, therefore, requires a close analysis of the relevant statutes and case law.

1.
The West Virginia Public Employee Retirement Act, West Virginia Code §§ 5-10-1 to -55 (2006), establishes the PERS and sets forth guidelines for calculating a PERS member's retirement annuity. Under this Act, the monthly benefit paid to a retired PERS member is based on two factors: the member's "final average salary" and their "credited service," i.e. the length of their qualified service as a public employee. W. Va.Code § 5-10-22(a).[3]
As it pertains to this case, the calculation of a member's final average salary is determined by averaging "the highest annual compensation received by a member . . . during any period of three consecutive years of credited service contained within the member's ten years of credited service immediately preceding the date his or her employment with a participating public employer last terminated." W. Va.Code § 5-10-2(13)(A). In the instant cases, the Appellees seek to increase their final average salaries, thereby ultimately increasing their monthly pension payments, by adding the amount of the lump sum payment each received for unused annual leave to the calculation of their final average salary.
*746 Pursuant to West Virginia Code § 5-3-3, a State employee who is a member of any of the various State retirement plans, including PERS, may request to be paid, in a lump sum, for any accrued and unused annual leave that remains as of the date of his or her retirement.[4] "[H]owever, lump sum payment for unused, accrued leave of any kind or character may not be a part of final average salary computation." Id. Thus, as it currently stands, the plain language of West Virginia Code § 5-5-3 expressly prohibits employees from including their lump sum payments in their final average salary calculation. The Appellees, however, argue that they are entitled to include their annual leave lump sum payments in their final average salary calculation, because of a version of the Code that was in effect from July 1988 until July 1989.
The Legislature first enacted West Virginia Code § 5-5-3 in 1986, approximately ten years after Mr. Myers, and thirteen years after Mr. Burton, had begun working for the State. In relevant part, the original statute simply provided that members of state retirement plans could elect to receive a lump sum payment for unused leave time at the conclusion of their employment. W. Va.Code § 5-5-3 (1986). This original version of the statute was silent as to whether the amount of this lump sum payment could be used in calculating a member's final average salary.
The following year, in March 1987, the Legislature amended this section of the Code to clarify that no employee retirement contributions should be taken from this lump sum payment. Specifically, the 1987 amendment added the following provision:
no deductions may be made for contributions toward retirement from lump sum payments for unused, accrued annual leave, since no period of service credit is granted in relation thereto, and where any such deduction of employee contribution may have been heretofore made, a refund of such shall be granted the former employee and made by the head of the respective former employer spending unit.
W. Va.Code § 5-5-3 (1987). Thus, the Legislature indicated that lump sum payments of annual leave were not to be treated in the same manner as an employee's salary for purposes of retirement contributions.
One year later, in March 1988, the Legislature again amended this section of the Code. This time, the revision provided that even though no retirement contributions were to be withdrawn from the lump sum payments, those payments could, in fact, be included in the calculation of an employee's final average salary. The statute, as amended in 1988, provided as follows:
Every eligible employee, as defined in section one of this article, at the time his or her active employment ends due to resignation, death, retirement or otherwise, may be paid in a lump sum amount, at his or her option, for accrued and unused annual leave at the employee's usual rate of pay at such time. The lump sum payment shall be made by the time of what would have been the employee's next regular pay *747 day had his employment continued. In determining the amount of annual leave entitlement, weekends, holidays or other periods of normal, noncountable time shall be excluded, and no deductions may be made for contributions toward retirement from lump sum payments for unused, accrued annual leave, since no period of service credit is granted in relation thereto; however, such lump sum payment is to be a part of final average salary computation; and where any such deduction of employee contribution may have been heretofore made, a refund of such shall be granted the former employee and made by the head of the respective former employer spending unit: Provided, That the superintendent of the department of public safety shall make deductions for retirement system contributions of member of the department, since retirement benefits are based on cumulative earnings rather than period of service.
W. Va.Code § 5-5-3 (1988) (emphasis added). This version of the statute became effective on July 1, 1988.
The following year, the Legislature amended the statute once again, this time removing the provision stating that "such lump sum payment is to be part of final average salary computation" and replacing it with the provision that "such lump sum payment may not be a part of final average salary computation." W. Va.Code § 5-5-3 (1989). Thus, the Legislature effectively repealed the 1988 amendment permitting annual leave lump sum payments to be included in an employee's final average salary calculation. This change became effective on July 8, 1989.
West Virginia Code § 5-5-3 was amended once more in 2005, but the relevant aspects of the statute remained the same. Thus, as of the date of each of the Appellees' respective retirements, the statute provided that employees could not include their lump sum payments for unused, accrued annual leave in their final average salary computations. The question before the Court, therefore, is whether the Appellees are entitled to the benefit that was afforded under the 1988 version of West Virginia Code § 5-5-3, which was enacted more than ten years after each had begun working for the State, but was effectively repealed approximately twenty years before either Appellee retired. To answer this question, the Court must turn to its case law.

2.
In Dadisman v. Moore, 181 W.Va. 779, 384 S.E.2d 816 (1988), the Court recognized that, by participating in a public retirement plan, public employees obtain constitutionally protected contractual rights. Id. at 789-90, 384 S.E.2d at 826-27. The Court therefore held that "[r]etired and active PERS plan participants have contractually vested property rights created by the pension statute, and such property rights are enforceable and cannot be impaired or diminished by the State." Id. at Syl. Pt. 16, 384 S.E.2d 816. As a result, "[t]he realization and protection of public employees' pension property rights is a constitutional obligation of the State. The State cannot divest the plan participants of their rights except by due process, although prospective modifications which do not run afoul of the federal or State impairment clauses are possible." Id. at Syl. Pt. 18, 384 S.E.2d 816.
Several years later, in Booth v. Sims, 193 W.Va. 323, 456 S.E.2d 167 (1995), the Court expounded upon the principles established in Dadisman, and clarified that even employees who are not yet eligible to retire can have constitutionally protected, or "vested," rights to their expected pension plan benefits. Id. at 337, 456 S.E.2d at 181. Once a member's rights to his or her pension benefits are "vested," the Legislature is constitutionally prohibited from reducing that member's benefits, unless he or she acquiesces to the change or unless the Legislature provides just compensation. Id. at 339, 341-42, 456 S.E.2d at 183, 185-86.
To determine whether a member has a vested right in a pension plan, the Court in Booth focused on the employee's expectation of, and reliance on, receiving the promised benefits. Id. at 337, 456 S.E.2d at 181. Specifically, the Court explained that employees have legitimate expectations that "the government will not detrimentally alter the pension scheme once the employee has spent *748 sufficient time in the system to have relied to his or her detriment." Id. at Syl. Pt. 6, 456 S.E.2d 167, in part. Accordingly,
[w]hen considering the constitutionality of legislative amendments to pension plans, an employee's eligibility for a pension does not determine whether he or she has vested contract rights. The determination of an employee's vested contract rights concerns whether the employee has sufficient years of service in the system that he or she can be considered to have relied substantially to his or her detriment on the existing pension benefits and contribution schedules.
Id. at Syl. Pt. 3, 456 S.E.2d 167.
The question, therefore, in considering whether the Legislature can reduce a particular employee's pension benefits, is whether the employee has substantially relied to his or her detriment on the existing benefits. Id. The Court recognized that "an employee's membership in a pension system and his or her forbearance in seeking other employment" are sufficient to show that the employee has so relied. Id. at 337, 456 S.E.2d at 181, and Syl. Pt. 7, in part. Consequently, the Court concluded that "after ten years of state service detrimental reliance is presumed." Id. at 340, 456 S.E.2d at 184, and Syl. Pt. 15, in part. The Legislature, however, may still make changes to a pension plan that only affect new employees or "employees with so few years of service that they cannot be said to have substantially relied to their detriment." Id. Whether an employee has participated for a substantial enough period to be found to have substantially relied on the pension plan, or whether other evidence indicates that they actually relied to their detriment on such a plan, is to be decided on a case-by-case basis. Id.
In sum, the Court in Booth explained that "[w]hen a public employee has devoted substantial service to the state that translates into substantial detrimental reliance, the State must provide just compensation for any pension expectancy it eliminates." 193 W.Va. at 339, 456 S.E.2d at 183. Thus, the Court held in syllabus point nineteen:
The pension rights of all current state pension plan members who have substantially relied to their detriment cannot be detrimentally altered at all, and any alterations to keep the trust fund solvent must be directed to the infusion of additional money. "Detrimentally alter" means the legislature cannot reduce the existing benefits (including such things as medical coverage) of the pension plan or raise the contribution level without giving the employee sufficient money to pay the higher contribution. Should the legislature seek to reduce certain advantages of a pension plan, it must offer equal benefits in their place as just compensation.
193 W.Va. 323, 456 S.E.2d 167, Syl. Pt. 19.
In 1999, the Court had the opportunity to apply the principles set forth in Booth to the Legislature's 1988 and 1989 amendments to West Virginia Code § 5-5-3. Adams v. Ireland, 207 W.Va. 1, 528 S.E.2d 197 (1999). In Adams, PERS member Donald Adams retired in 1996 after almost thirty-six years of employment with the State. Id. at 4, 528 S.E.2d at 200. Accordingly, like the Appellees in the instant case, Mr. Adams had contributed to PERS for over ten years prior to the 1988 amendment to West Virginia Code § 5-5-3. Unlike the Appellees in the instant case, however, in 1988, Mr. Adams was fifty-two-years-old and eligible for an early retirement incentive package that had just been enacted by the Legislature. Id. Employees who elected to participate in this early retirement package were required to make such election known by December 31, 1988. Id. Mr. Adams declined the early retirement package in order to continue working for the State "in the expectation that he would have a higher final average salary in the future" by accruing additional unused leave time which, under the 1988 Amendment, could be added to his final average salary computation. Id.
When Mr. Adams finally retired in 1997, the Board, acting pursuant to the 1989 Amendment, refused to include Mr. Adams' lump sum payment for his unused leave time in the calculation of his final average salary. Mr. Adams appealed, asserting that "in 1988 he made a decision to continue his employment *749 with the State in reliance upon the 1988 version of W. Va.Code 5-5-3, and expected that he would be able to add his accrued but unpaid leave to his final average salary when he retired. . . ." Id. at 5, 528 S.E.2d at 201. Nevertheless, the circuit court affirmed the Board's decision finding, among other things, that the 1989 Amendment to § 5-5-3 was not an unconstitutional impairment of Mr. Adams' contract with the State, because it was not a "substantial impairment." Id.
On appeal, this Court reversed the circuit court's decision, applying the analysis set forth in Booth. The Court found that "[t]he length of time that a public employee pension statute was in effect is not the controlling factor in determining whether a subsequent statutory amendment has unconstitutionally impaired a public employee's contract." Id. at 8, 528 S.E.2d at 204. Instead, the determinative factor, as set forth in Booth, "is whether the employee may be said to `have substantially relied to their detriment' on the statute." Id. Thus, the Court in Adams directed the circuit court, on remand, to focus on whether Mr. Adams had actually "substantially participated in the public employee's retirement system, or whether the appellant relied to his detriment on the 1988 version of W. Va.Code § 5-5-3." Id. The Court clearly indicated that, should the evidence support Mr. Adams's contention that he actually substantially relied on the 1988 amendment to West Virginia Code § 5-5-3 in prolonging his retirement, he would have a constitutionally protected property interest in that benefit, which the Legislature could not remove without just compensation.

3.
Relying on Booth, the Appellees in the instant appeal argue that they are entitled to the benefit bestowed by the Legislature in the 1988 version West Virginia Code § 5-5-3. They point out that, at the time the 1988 amendment was enacted, each had devoted "substantial service" to the state by having worked for the State for more than ten years. See Booth, 193 W.Va. at 340, 456 S.E.2d at 184, and Syl. Pt. 15. They argue that, under Booth, the length of their service alone entitles each to the presumption of detrimental reliance; in turn, this reliance means that each Appellee had a "vested" right to the benefits of the plan at the time of the 1988 amendment. See id. at 337, 456 S.E.2d at 181, and Syl. Pt. 3. The Appellees contend that, as a consequence, the Legislature could not eliminate any of their pension benefits without providing just compensation. See id. at 341, 456 S.E.2d at 185, and Syl. Pt. 19. Because no just compensation has been provided for the benefit eliminated by the Legislature's 1989 amendment to West Virginia Code § 5-5-3, the Appellees argue that they are entitled to the original benefit as set forth in the 1988 amendment.
Alternatively, the Appellees each argue that, even if the presumption of detrimental reliance is inapplicable in this case, each has shown, through his decision to remain employed by the State for his entire career, actual detrimental reliance on the PERS and, thus, each is entitled to the benefit of the 1988 amendment. Each Appellee points to his testimony, before the hearing officer, that he had received and turned down job offers during his career with the State, which the Court in Booth cited as a basis for showing detrimental reliance.
The Board, on the other hand, argues that the presumption of detrimental reliance discussed in Booth is inapplicable under these facts, because the benefit at issue was only in effect for one year. Thus, the Board contends that neither Appellee could have relied to his detriment on that benefit for ten or more years, as required to be entitled to the presumption. Moreover, the Board contends that, in each case, the Appellee has failed to establish actual detrimental reliance on the 1988 amendment because, unlike the plaintiff in Adams, neither Mr. Burton nor Mr. Myers was eligible to retire during the 1988-1989 time period. The Board asserts that while both of the Appellees may have relied on the PERS as a whole, neither presented any evidence to show actual reliance on this specific benefit in the continuation of their State employment. Thus, because neither Appellee can show substantial reliance to his detriment on the benefit at issue, the Board asserts that the Appellees have failed to establish that they have a constitutionally protected property interest in that benefit.
*750 In considering these issues below, each of the circuit courts concluded that the Appellees are entitled to the benefit of the 1988 amendment, but for different reasons. In Mr. Myers's case, the circuit court agreed with the Board that the presumption of detrimental reliance did not apply, given that the benefit was in effect for such a short period, but found that the facts in the case were sufficient to show that Mr. Myers had actually substantially relied to his detriment, thereby entitling him to the benefit. On the other hand, the circuit court in Mr. Burton's case concluded that the presumption of detrimental reliance is applicable in this case and, thus, that Mr. Burton was entitled to that presumption given that he had been employed by the State for over ten years when the 1988 benefit was enacted. Moreover, it found that Mr. Burton had also presented sufficient facts to show actual detrimental reliance and, thus, it reversed the Board's decision on that ground as well.
Turning first to whether the Appellees are entitled to a presumption of detrimental reliance, the Court recognizes that the language of Booth can be construed in such a manner as to support both the Board and the Appellees' respective positions. Nevertheless, the Court finds that the Appellees' requested interpretation produces an absurd result.
In Booth, the Court focused on the rights of an employee who has relied, for a substantial period of time, on a promise by the Legislature that he or she will receive certain benefits at retirement. The Court in that case sought to ensure that employees would be able to rely on promised benefits in planning for their futures. Thus, the Court held that once an employee has relied on the promise of certain benefits, the Legislature cannot simply take them away without providing something of equal value. Moreover, because many employees may not be able to produce tangible evidence to show that they relied, to their detriment, on any specific promised benefit, the Court further held that such reliance may be presumed after an employee has worked for the State for a significant period of time, which the Court reasoned to be ten years or more.
In the instant case, however, the benefit at issue was only promised for one year. The Appellees reason that because they had worked for the State for more than ten years prior to the promise being made, they are entitled to the presumption of detrimental reliance for all of the benefits promised under the plan at that time. The Court does not agree. Although the Appellees may have substantially relied on the pension plan for more than ten years prior to this amendment, they had not relied on a pension plan that included the promise of being able to include the amount of a lump sum payment for unused annual leave in their final average salary calculation. Consequently, the Appellees cannot be presumed to have relied to their detriment on that particular benefit, given the short duration of its existence. The Order of the Circuit Court of Kanawha County granting such presumption to Mr. Burton, therefore, is reversed.
Thus, to prevail in this matter, the Appellees must be able to show actual detrimental reliance on the 1988 amendment, similar to the reliance alleged by the employee in Adams. This is a factual question that requires the Court to afford deference to the Board's findings. Indeed, this Court will not set aside the Board's factual findings unless they are "[c]learly wrong in view of the reliable, probative and substantial evidence on the whole record" or "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." W. Va.Code § 29A-5-4(g)(5) & (6).
In reviewing the evidence presented by the Appellees at their respective hearings before the Board's hearing officer, the Court cannot find that the Board clearly erred in concluding that neither Appellee had established actual detrimental reliance on this particular benefit. While both Appellees clearly relied throughout their years of employment on the PERS as a whole, neither presented any specific evidence indicating that they relied to their detriment on this specific provision. Unlike the plaintiff in Adams, neither of the Appellees in this case was eligible to retire during the year this benefit was in effect and, thus, unlike Mr. Adams, neither of the Appellees could have based any retirement *751 decision on the promise contained in the 1988 amendment. Indeed, neither Appellee introduced any evidence to show that he made any decision whatsoever on the basis of that particular promised benefit.
Under these facts, the Court cannot find that the Board clearly erred in ruling that the Appellees failed to show actual detrimental reliance. The circuit courts, therefore, erroneously failed to defer to the factual findings of the Board, and their Orders are reversed on this basis. Thus, because the Appellees are not entitled to a presumption of detrimental reliance and failed to establish actual detrimental reliance, the Court reinstates the Board's decisions that neither Appellee is entitled to include the amount of their lump sum payments for unused annual leave in the calculation of their final average salaries.

B. Appellee Myers's Cross-Assignment of Error
In his cross-assignment of error, Mr. Myers appeals the Board's decision to rescind, and its subsequent refusal to reinstate, two months of service credit for work Mr. Myers performed during the summer of 1972. As previously noted, an employee's final average salary is determined, in part, on the employee's total "credited service." W. Va.Code § 5-10-22(a).
As a college student at West Virginia University, Mr. Myers was recruited to work for the DOH through a cooperative education program. In this program, an undergraduate student who maintained a certain academic performance in a civil engineering program was eligible to work for the DOH during the summer. This summer employment was considered "part-time" and, thus, no retirement system contributions were made on the student's behalf, nor did the student accrue any service credit during those summers. Upon completion of the program, the student could apply to work full-time for the DOH.
Mr. Myers participated in this program as a student engineer during the summers of 1972, 1973, 1974, and 1975. During the summer of 1972, the DOH mistakenly classified Mr. Myers as a full time employee and, therefore, deducted retirement system contributions from his paychecks. Specifically, from June 5, 1972, until August 21, 1972, the DOH withheld 4.5% of Mr. Myers's gross income as a contribution to PERS, which totaled $39.72. The DOH further recorded two months of service credit for Mr. Myers's work that summer. This mistake was not repeated in the following summers. Following his college graduation, the DOH hired Mr. Myers as a full-time employee.
After Mr. Myers became a full-time employee, the DOH continued to record two months of service credit for his work during the summer of 1972. In 1999, Mr. Myers contacted the Board to request an additional one month of service credit for his work during that summer. In addition, pursuant to West Virginia Code § 5-10-14(f), Mr. Myers sought to retroactively purchase service credit for his work during the summers of 1973, 1974, and 1975. The Board staff denied both requests, and Mr. Myers appealed to a Board hearing officer.
The hearing officer, in a recommendation issued on March 31, 2000, likewise denied Mr. Myers's request to purchase additional service credit for those summers, finding that his employment at that time was neither full-time nor permanent, as required by West Virginia Code § 5-10-2(11) and West Virginia Code of State Regulations § 162-5-7. He recommended, however, that Mr. Myers be permitted to retain the two months of service credit previously allotted for the summer of 1972, stating that "[a]lthough it is clear that Mr. Myers' participation in the system in 1972 was in error, equity suggests that he be permitted to retain this two-months service credit." The hearing officer's actual recommendation to the Board, however, simply stated: "[i]t is recommended that the request of Rodney A. Myers for additional service credit for 1972 and to acquire service credit for employment in 1973, 1974 and 1975 be denied."
On May 10, 2000, the PERS Board of Trustees considered the hearing officer's recommendation. At that hearing, the hearing officer informed the Board of Trustees of his recommendation, indicating that, as a "sub-recommendation," he believed that Mr. *752 Myers should be permitted to retain the two months of service credit for 1972. During the meeting, the Board of Trustees questioned the hearing officer about the appropriateness of the "sub-recommendation," given his finding that Mr. Myers was not eligible to receive service credit for his work during those summer months. In response, the hearing officer explained his equity analysis, but concluded by noting that his formal "Recommended Decision," on which the Board would vote, did not actually include any recommendation regarding the two months already credited for the summer of 1972. The Board of Trustees then issued a final order adopting the hearing officer's "Recommended Decision." That order was never appealed.
In 2007, while reviewing Mr. Myers's application for retirement benefits, the Board staff reconsidered the two months of service credit awarded for the summer of 1972. In February 2008, at the Board's direction, the DOH refunded Mr. Myers's original PERS contribution of $39.72, without interest.[5] The Board then removed the two months of service credit from Mr. Myers's total service credit calculation. Mr. Myers requested that the Board reinstate that credit, arguing that the Board had allowed him to retain this credit in its May 10, 2000, ruling. The Board, however, refused in a decision dated September 3, 2008.
Mr. Myers appealed this issue to the Board's hearing officer, who considered the question in conjunction with Mr. Myers's appeal relating to the calculation of his final average salary. During the evidentiary hearing, the Board stipulated that it had, in fact, included two months of service credit for the summer of 1972 in every retirement statement it issued to Mr. Myers throughout his career. Nevertheless, the hearing officer recommended against reinstating the two months of service credit, finding that such credit was originally awarded in error, and that the original recommendation to the Board of Trustees in Mr. Myers's 2000 appeal did not actually include a recommendation as to the two months of service credit from the summer of 1972. This recommended decision was adopted by the Board of Trustees, and Mr. Myers appealed the decision to the circuit court, which affirmed the Board's decision.
Now, in a cross-assignment of error, Mr. Myers contends that the doctrine of res judicata should prevent the Board from changing its position on the two months of service credit. While he does not dispute that the DOH erred in originally awarding service credit for those two months, he contends that the Board had previously taken the position that he be allowed to retain that credit on the basis of equity. Specifically, he contends that, in March 2000, the hearing officer recommended that he be allowed to retain credit for those two months, and that the Board of Trustees adopted that recommendation on May 10, 2000. Thus, he argues that the circuit court erred in affirming the Board's 2008 decision to rescind the credit for those two months because the doctrine of res judicata should have precluded the Board from reconsidering that issue.
"The purpose of res judicata, also referred to as `claim preclusion,' is to `preclude the expense and vexation attending relitigation of causes of action which have been fully and fairly decided.'" Antolini v. W. Va. Div. of Natural Res., 220 W.Va. 255, 258, 647 S.E.2d 535, 538 (2007) (quoting Sattler v. Bailey, 184 W.Va. 212, 217, 400 S.E.2d 220, 225 (1990)).
Before the prosecution of a lawsuit may be barred on the basis of res judicata, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could *753 have been resolved, had it been presented, in the prior action.
Syl. Pt. 4, Blake v. Charleston Area Med. Ctr., Inc., 201 W.Va. 469, 498 S.E.2d 41 (1997). If, as in this case, the original adjudication arose in the context of an administrative proceeding, certain additional considerations are necessary:
For issue or claim preclusion to attach to quasi-judicial determinations of administrative agencies, at least where there is no statutory authority directing otherwise, the prior decision must be rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court. In addition, the identicality of the issues litigated is a key component to application of administrative res judicata or collateral estoppel.

Syl. Pt. 2, Vest v. Bd. of Educ., 193 W.Va. 222, 455 S.E.2d 781 (1995) (emphasis added).
The circuit court below concluded that the Board did not err or abuse its discretion in withdrawing, and then refusing to reinstate, the service credit for Mr. Myers's two months of work during the summer of 1972. The circuit court found that substantial evidence supported the Board's conclusion that Mr. Myers's work during that summer was "provisional and temporary" and, thus, did not constitute "full time employment," as required to be "credited" service. See W. Va. C.S.R. § 162-5-2.3. The circuit court further dismissed Mr. Myers's res judicata argument, finding that the required elements for applying the doctrine of res judicata to an administrative adjudication are absent in this case.
Upon review,[6] this Court finds no error in the circuit court's reasoning. As previously explained, the Board of Trustees did not actually adopt the hearing officer's "sub-recommendation" that Mr. Myers be permitted to retain service credit for his work during the summer of 1972 on the basis of equity. Although the hearing officer made such "sub-recommendation," it is clear from the transcript of the Board of Trustees' meeting in May 2000 that the only language it adopted simply recommended that "the request of Rodney A. Myers for additional service credit for 1972 and to acquire service credit for employment in 1973, 1974 and 1975 be denied." The Board of Trustees, therefore, never issued an adjudicatory decision regarding the two months of service credit. Consequently, there is no final decision on that issue from May 2000 to which the doctrine of res judicata could be applied.
Moreover, when the Board of Trustees issued its May 2000 decision, it did not have any adjudicatory authority to determine whether Mr. Myers should have been permitted to retain the two months of service credit because that request had not properly been considered by the Board's staff first. Pursuant to the West Virginia Code of State Regulations § 162-2-7.1, appeals other than those for disability retirement benefits must first be considered by the Board's staff. If the Board's staff denies a request, it must notify the applicant in writing of their decision, stating the reasons for the denial. Id. The applicant may then appeal the Board staff's written denial to the hearing officer and Board of Trustees. Id. at § 162-2-7.2.
In this case, Mr. Myers had requested permission from the Board's staff to purchase service credit for the summers of 1973, 1974, and 1975, as well as an additional month of credit for the summer of 1972. At that time, Mr. Myers was still being credited for two months of service during the summer of 1972 and, thus, he did not raise these two months as an issue. After considering Mr. Myers's request to purchase additional credit, the Board's staff issued a written denial without any mention of the two months of credited service that had been erroneously granted for the summer of 1972. Mr. Myers appealed that decision to the hearing officer. In the course of affirming the Board staff's denial of Mr. Myers's request to purchase additional service credit, the hearing officer noted that the original two months had been erroneously awarded, but made a "sub-recommendation" *754 that the Board continue to credit those two months on the basis of equity. That issue, however, was never properly before the hearing officer because it had never been considered by the Board's staff. See W. Va.C.S.R. § 162-2-7.2. Thus, the Board of Trustees likewise had no authority to address the issue in its May 2002 order adopting the hearing officer's Recommended Decision.
Accordingly, as the circuit court found, res judicata is inapplicable in this case because no prior decision was rendered on this particular issue pursuant to the Board of Trustee's adjudicatory authority. See Vest, 193 W.Va. 222, 455 S.E.2d 781, Syl. Pt. 2. The Court, therefore, affirms the Board's refusal to reinstate the two months of service credit erroneously awarded to Mr. Myers for his work during the summer of 1972.[7]

IV. CONCLUSION
For the reasons stated herein, the Court reverses the final order of the Circuit Court of Lewis County, West Virginia, entered on July 2, 2009, and the final order of the Circuit Court of Kanawha County, West Virginia, entered on August 5, 2009, finding that Mr. Myers and Mr. Burton are entitled to include the amount of their lump sum payments for unused annual leave in their final average salary calculations. The Court affirms, however, the Circuit Court of Lewis County's ruling as to Mr. Myers's cross-assignment of error, and holds that Mr. Myers is not entitled to receive two months of service credit for his work for the DOH during the summer of 1972.
Affirmed, in part, and Reversed, in part.
NOTES
[1] The Appellant, the West Virginia Consolidated Public Retirement Board, appeals from the decision of the Circuit Court of Lewis County, West Virginia, as to Appellees Rodney and Diane Myers, and appeals from the decision of the Circuit Court of Kanawha County, West Virginia, as to Appellee Richard Burton.
[2] For the sake of simplicity, the facts relating to Mr. Myers's cross-assignment of error will be related in subsection "B" of this opinion, where that issue is addressed.
[3] Specifically, a member's monthly benefit is "equal to one and five-tenths per cent of [the member's] final average salary multiplied by the number of years, and fraction of a year, of [the member's] credited service" subject to certain reductions. W. Va.Code § 5-10-22(a).
[4] The current version of West Virginia Code § 5-5-3, which was last modified in 2003, states in full:

Every eligible employee, as defined in section one of this article [§ 5-5-1], at the time his or her active employment ends due to resignation, death, retirement or otherwise, may be paid in a lump sum amount, at his or her option, for accrued and unused annual leave at the employee's usual rate of pay at the time. The lump sum payment shall be made by the time of what would have been the employee's next regular payday had his or her employment continued. In determining the amount of leave entitlement, weekends, holidays or other periods of normal, noncountable time shall be excluded, and no deductions may be made for contributions toward retirement from lump sum payments for unused, accrued leave of any kind or character, since no period of service credit is granted in relation thereto; however, lump sum payment for unused, accrued leave of any kind or character may not be a part of final average salary computation; and where any deduction of employee contribution may have been made previously, a refund of the amount deducted shall be granted the former employee and made by the head of the respective former employer spending unit: Provided, That the Superintendent of the West Virginia State Police shall make deductions for retirement contributions of members of the State Police Death, Disability and Retirement Fund created and continued in section twenty-six, article two, chapter fifteen of this code since retirement benefits are based on cumulative earnings rather than period of service.
W. Va.Code § 5-5-3 (2005).
[5] The Board acknowledges that the DOH did not pay interest to Mr. Myers on the erroneously withheld funds. Pursuant to West Virginia Code § 5-10-44 (2006), however, the DOH, not the Board, is responsible for paying such interest.
[6] This Court reviews the cross-assignment of error under the same standard applied to the rest of this appeal; the Court reviews questions of law de novo, while findings of fact by the administrative body "are accorded deference unless the reviewing court believes the findings to be clearly wrong." Muscatell, 196 W.Va. 588, 474 S.E.2d 518, Syl. Pt. 1, in part.
[7] While Mr. Myers may have relied on the Board's erroneous representation that he would receive service credit for those two months, the Board is statutorily bound by West Virginia Code § 5-10-44 to correct errors in the calculation of a PERS member's service credit. Id. ("If any change or employer error in the records of any participating public employer or the Retirement System results in any person receiving from the system more or less than he or she would have been entitled to receive had the records been correct, the Board shall correct the error. . . ."). The statute does not limit this requirement for equitable reasons. Thus, the circuit court correctly upheld the Board's decision in this regard.