# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Perry Palmer,**
**Petitioner Below, Petitioner**

**vs.)  No. 20-0345** (Kanawha County 20-AA-11)

**West Virginia Consolidated Public Retirement Board,**
**Respondent Below, Respondent**

**FILED**

**March 23, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Perry Palmer, by counsel Gail V. Lipscomb, appeals the Circuit Court of Kanawha County's April 24, 2020, final order affirming the decision of the West Virginia Consolidated Public Retirement Board ("the Board") that petitioner was part of Tier II of the Public Employees Retirement System. Respondent the Board, by counsel J. Jeaneen Legato, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

As a deputy sheriff, petitioner was a member of the Public Employees Retirement System ("PERS") from 1991 until 1998. In 1998, legislation was passed that created the Deputy Sheriffs' Retirement System ("DSRS") and allowed deputy sheriffs participating in PERS to elect to transfer their service in PERS to become members of the new DSRS.[1] According to the circuit court, members who elected to transfer to DSRS statutorily agreed to indemnify and hold PERS harmless from any liabilities or retirement benefits whatsoever. Petitioner elected to transfer his service credit to become a participating member in DSRS. In 2015, additional legislation was passed that created a Tier II in PERS for all new members enrolled in PERS after July 1, 2015. The circuit court found that the newly created Tier II

---

[1] According to the Board, DSRS offered better benefits than PERS, including a lower retirement age, higher multiplier in the annuity calculation, and better disability benefits. However, DSRS had a higher employee contribution rate.

was a cost saving mechanism which established a higher employee contribution rate and provided lower employee benefits. Most significantly, Tier II employees have to work for ten (10) years to vest as opposed to five (5) years for Tier I employees. Tier II employees also have to pay a higher employee contribution rate than Tier I employees.

In 2016, petitioner was elected sheriff. At that time, he opted to retire under DSRS and began receiving a DSRS annuity effective December 31, 2016.

Once he took office in January of 2017, petitioner became a participating member of PERS. According to the circuit court, due to a "computer error, [p]etitioner was mistakenly enrolled in Tier I of the PERS instead of Tier II. The computer program failed to recognize that [p]etitioner's earlier service in the PERS had been voided due to his transfer to DSRS in 1998."[2] The computer error was brought to the Board's attention in 2019, at which point Executive Director Jeffrey Fleck sought a legal opinion from in-house and outside counsel who both unequivocally agreed that those individuals should be placed in Tier II. In June of 2019, the Board notified petitioner in writing that he had mistakenly been placed in Tier I and that the Board, as a fiduciary, would have to correct the mistake.

On August 8, 2019, petitioner filed an administrative appeal of the Board's decision to place petitioner in Tier II. Hearing Officer Gary Pullin recommended that petitioner should be in Tier II and that petitioner's appeal should be denied. The Board issued its final order on December 19, 2019, which adopted the recommended decision of the hearing officer, denying petitioner's appeal. Petitioner appealed that order to the Circuit Court of Kanawha County.

According to the circuit court's April 24, 2020, final order, the determinative issue in the appeal was whether the Board correctly found that the provisions of West Virginia Code § 7-14D-8(c)[3] revoked all membership rights petitioner, as a transferring deputy sheriff, had in PERS and

---

[2] This finding is supported by the testimony of the Executive Director of the Respondent Board, Jeffrey Fleck, who testified during the administrative hearing that in 2015, when the PERS Tier II came into effect, the Board was implementing a new computer system that automatically and incorrectly placed members like petitioner in Tier I instead of Tier II.

[3] West Virginia Code § 7-14D-8(c) provides:

Once a deputy sheriff has elected to transfer from the Public Employees Retirement System, transfer of that amount as calculated in accordance with the provisions of subsection (b) of this section by the Public Employees Retirement System shall operate as a complete bar to any further liability to the transferring [. . .] Public Employees Retirement System, and constitutes an agreement whereby the transferring deputy sheriff forever indemnifies and holds harmless the Public Employees Retirement System from providing him or her any form of retirement benefit whatsoever until such time as that deputy sheriff obtains other employment which would make him or her eligible to re-enter the Public Employees Retirement

(Continued . . .)

that he could not make any claim for retirement benefits under PERS unless and until he obtained subsequent employment that would entitle him to participate in PERS. "Essentially, the issue is whether [p]etitioner should be in Tier I or Tier II of the PERS." After addressing the relevant statutes and facts, the circuit court determined that petitioner should have been placed in Tier II membership because he became a member of PERS after July 1, 2015. It, therefore, affirmed the Board's denial of petitioner's request to participate as a Tier I member of PERS. Petitioner appeals from the circuit court's April 24, 2020, final order.

> "'On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4[(g)] and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.' Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996)."

Syl. Pt. 1, *Myers v. W. Va. Consol. Pub. Ret. Bd.*, 226 W.Va. 738, 704 S.E.2d 738 (2010). Moreover, "'[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syl. Pt. 1, *Jones v. W. Va. Pub. Employees Ret. Sys.*, 235 W. Va. 602, 775 S.E.2d 483 (2015).

On appeal, petitioner sets forth two assignments of error. First, he contends that the Board's action changing petitioner from Tier I to Tier II is an unlawful demotion of petitioner's retirement and is inconsistent with and contrary to the clear and unambiguous language contained in West Virginia Code § 5-10-29.[4] Petitioner asserts that it is undisputed that he first entered PERS in 1991

System with no credit whatsoever for the amounts transferred to the Deputy Sheriff's Retirement System.

[4] West Virginia Code § 5-10-29 (b) provides:

The contributions of a member to the retirement system (including any member of the Legislature, except as otherwise provided in subsection (g) of this section) shall be a sum of not less than three and five-tenths percent of his or her annual compensation but not more than four and five-tenths percent of his or her annual compensation, as determined by the board of trustees: *Provided,* That for persons who first become members of the retirement system on or after July 1, 2015, the contributions to the system shall be six percent of his or her annual compensation beginning July 1, 2015. The said contributions shall be made notwithstanding that the minimum salary or wages provided by law for any member shall be thereby changed. Each member shall be deemed to consent and agree to the deductions made and provided for herein. Payment of a member's compensation less said deductions shall be a full and complete discharge and acquittance of all claims and demands whatsoever for services rendered by him or her to a participating public employer, except as to benefits provided by this article.

and re-entered PERS in 2017. Without citing to the record, petitioner argues that the Board turns to a

> statute enacted seventeen (17) years[s] prior to the PERS modification of § 5-10-29(b) in 2015. However, the plain language of that . . . statute . . . §7-14D-8 apparently did not adequately suit [the Board's] new "needs". [The Board] created an obscure and convoluted 'interpretation' of §7-14D-8 asserting that the 1998 statu[t]e holds precedent and direction over the 2015 statute's specific language with "unwritten" words. At the time of the enactment of §7-14D-8 in 1998 only one membership status existed in PERS (now referred to as Tier I). There was no need, intent or reason for §7-14D-8 to contemplate membership status upon re-entry into PERS because there was only one membership status and contribution rate. The . . . Board has misconstrued, misinterpreted and egregiously 'applied' unstated and unspoken language, while omitting other pertinent language in W.Va. Code §7-14D-8(c) to deny [p]etitioner's appeal.

Petitioner argues that the language used by the Legislature in 2015 was specific, plain, and understandable. He points out that § 5-10-29(b) does not state that "all members" entering after 2015 are at a 6% rate, nor does it state that "any member," whether entering or re-entering, shall have a Tier II contribution rate. It also does not provide that a re-entering deputy sheriff be classified as first entering after July of 2015. Further, he contends that the Board's theory requires that the term "re-entry" in § 7-14D-8 no longer be given its ordinary meaning; instead, it should be legally interpreted as first entry as it relates to § 5-10-29(b).

As the Board argues, West Virginia Code § 7-14D-8(c) specifically precludes any transferring deputy from taking advantage of benefits he was entitled to based upon his previous membership. Petitioner's argument fails to consider and apply that statute and is contrary to the clear intent of the 2015 amendments to West Virginia Code § 5-10-1 to create two tiers in PERS as a cost saving mechanism. The Board asserts that the statutory provisions of both PERS and DSRS apply to petitioner because he is a current retiree of DSRS and a current member of PERS Tier II. Upon the creation of the DSRS, in order to receive service credit in DSRS for the time spent in PERS, the members had to transfer their service, contributions, and earnings on those contributions from PERS to DSRS; therefore, all of their assets in PERS transferred to DSRS. Thus, those who irrevocably elected to transfer ceased being members of PERS and became members of DSRS. The Board argues that the statute "dictates that when they made the irrevocable election to transfer from [] PERS to the DSRS – everything transferred with it. Pursuant to W.V[a]. Code §[§]7-14D-5(b) and 8(c), when the assets transferred so did their service credit and membership[,] as well as any rights and privileges to anything PERS related." Under the specific facts of this case, we agree with the Board.

West Virginia Code § 7-14D-8(c) specifically provides, in part, that "the transferring deputy sheriff forever indemnifies and holds harmless the public employees retirement system from providing him or her any form of retirement benefit whatsoever until such time as that deputy sheriff obtains other employment . . . ." It is clear from this language that once the deputy sheriff transfers from PERS to DSRS, he/she is owed no retirement benefit from PERS, which includes credit for any membership that ever existed under PERS. The practical effect of petitioner's

4

transfer to DSRS makes it as if petitioner was a member of DSRS beginning in 1991, rather than being a member of PERS during that time. We, therefore, find that the circuit did not err in finding that when petitioner entered PERS, as an elected sheriff, he was in Tier II of the PERS system.

Petitioner's second assignment of error is his contention that both the Board and the circuit court disregarded the plain language of § 5-10-29 and the applicable case law in wrongfully concluding the Board's action was proper. Petitioner argues the Board's and circuit court's findings of facts and conclusions of law are clearly erroneous, arbitrary, capricious, and an abuse of discretion. However, petitioner fails to cite to the record in support of this assignment of error. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . . The argument *must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal.* The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(Emphasis added). Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the . . . record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioner's brief is inadequate as it fails to comply with the administrative order and the West Virginia Rules of Appellate Procedure. To the extent this assignment of error was not addressed in our discussion of the first assignment of error, we decline to address this second assignment of error on appeal.

Affirmed.

**ISSUED:** March 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton