528 S.E.2d 197

**Donald R. ADAMS and Mary Sue Adams, Plaintiffs below, Appellants,**

v.

**Betty IRELAND, in her capacity as Executive Secretary of the Consolidated Public Retirement Board; and Glen B. Gainer, III, in his capacity as State Auditor, Defendants below, Appellees.**

No. 26440.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 3, 1999.

Decided Dec. 15, 1999.

Thomas J. Gillooly, Esq., Charleston, West Virginia, Attorney for Appellants.

Ancil G. Ramey, Esq., Steptoe & Johnson, Charleston, West Virginia, Attorney for Appellees.

PER CURIAM:

This appeal involves a February 2, 1999 order of the Circuit Court of Kanawha County. In the order, the circuit court dismissed a complaint filed by a retired state employee who sought mandamus relief and damages from the State of West Virginia's Consolidated Public Retirement Board. The circuit court ruled that the retired state employee had failed to state a claim when he alleged that the State, by amending a retirement pension statute while the employee was working for the State, had unconstitutionally impaired the employee's contract with the State. Furthermore, the circuit court ruled that the employee's claims were time-barred by the statute of limitations and the equitable doctrine of laches.

After careful consideration of the briefs, the arguments of the parties, and of all matters of record, we conclude that the circuit court erred in dismissing the retired state employee's complaint. As set forth below, we reverse the circuit court's order and remand the case for further proceedings.

I.

Appellant Donald R. Adams is a retired West Virginia state employee. The appellant was hired by the State on January 16, 1961

at the age of 25. After almost 36 years of service, he retired on December 31, 1996 at the age of 60. As a retired state employee, the appellant receives retirement benefits from a statutorily-created pension plan that is administered by the Consolidated Public Retirement Board ("CPRB"). The appellant's retirement benefits are calculated as a percentage of his "final average salary" at the time that he retired in 1996.[1]

While the appellant was still employed by the State, the Legislature adopted *W.Va. Code*, 5–5–3 [1987] to give retiring state employees the option of converting their unused annual leave to a lump-sum cash payment. However, in March 1988, the Legislature amended *W.Va.Code*, 5–5–3 to also give retiring state employees the option of adding the cash value of their unused annual leave to their "final average salary," and thereby increasing their monthly retirement benefits received from the State.

Mr. Adams contends that in 1988, at the age of 52, he was eligible for retirement under an early retirement incentive package enacted by the Legislature. *See W.Va.Code*, 5–10–22c [1988].[2] Therefore, the appellant alleges that in 1988 he had two options. He could either take early retirement under *W.Va.Code*, 5–10–22c [1988], or he could retire later and accrue additional unused leave time that would be added into the computation of his average final salary under *W.Va. Code*, 5–5–3 [1988]. Mr. Adams chose not to

take early retirement at age 52, and claims that he continued working for the State in the expectation that he would have a higher final average salary in the future through the operation of *W.Va.Code*, 5–5–3 [1988].

Any state employee who wished to take advantage of the early retirement incentive package was required to elect to participate by December 31, 1988. The early retirement incentive package established by *W.Va.Code*, 5–10–22c [1988] expired on that date by its own terms. The appellant did not take the early retirement package, and continued working for the State.

After the early retirement incentive program expired, effective July 8, 1989 the Legislature amended *W.Va.Code*, 5–5–3 [1988], changing the statute to state that accrued annual leave could *not* be used in the calculation of a retiree's final average salary. Under the 1989 version of the statute, retiring state employees could only convert their accrued but unused annual leave into a lump sum payment, and could no longer apply unused annual leave to increase their monthly retirement benefits.

Nineteen months after his retirement, on August 5, 1998, the appellant (along with his wife Mary Sue Adams) filed this action against Betty Ireland, the head of the CPRB, asking the circuit court to issue a writ of mandamus to compel the CPRB to recalcu-

---

1. *W.Va.Code*, 5–10–2(15) [1997], in pertinent part, defines "final average salary" in the following manner:

   "Final average salary" means either: (a) The average of the highest annual compensation received by a member ... during any period of three consecutive years of his credited service contained within his or her ten years of credited service immediately preceding the date his or her employment with a participating public employer last terminated; or (b) if he or she has less than five years of credited service, the average of the annual rate of compensation received by him or her during his or her total years of credited service; ...

2. The "temporary early retirement incentives program" created by *W.Va.Code*, 5–10–22c [1988] established three incentive options for eligible public employees:

   (1) Add ⅛ of the employee's "final average salary" to the true final average salary to compute retirement benefits; or

(2) The employee could accept a lump sum payment of 10% of the final average salary, not to exceed $5,000; or

(3) The employee could add an additional 2 years to his or her length of service and 2 years to his or her age—thereby effectively lowering the age at which the employee could retire.

The early retirement incentives program was enacted on March 12, 1988, and allowed employees to take advantage of the early retirement incentives between April 1, 1988 and June 30, 1989. *See 1988 Acts of the Legislature*, Ch. 101. On June 28, 1988, the Legislature amended *W.Va. Code*, 5–10–22c such that employees could only take advantage of the incentives between April 1, 1988 and December 31, 1988. Certain other employees could participate if they would be eligible for retirement by July 1, 1989; however, those employees were required to elect to take early retirement by December 31, 1988. *See 1988 Acts of the Legislature, Third Extraordinary Session*, Ch. 9.

late and increase his retirement benefits. Specifically, the appellant contended that the 1988 version of *W.Va.Code*, 5-5-3 required the CPRB to allow him to add the accrued, unpaid leave time that he had accumulated at the time of his retirement to his final average salary for purposes of calculating his retirement benefits.

Before the circuit court, the appellant took the position that the 1989 amendment to *W.Va.Code*, 5-5-3 unconstitutionally impaired an obligation of contract, in violation of Article III, Section 4 of the *West Virginia Constitution*.[3] The appellant alleged that the State could not unilaterally decrease the level of retirement benefits of an employee vested in the retirement system, particularly when the employee had detrimentally relied upon that level of benefits. The appellant alleged that in 1988 he made a decision to continue his employment with the State in reliance upon the 1988 version of *W.Va.Code*, 5-5-3, and expected that he would be able to add his accrued but unpaid leave to his final average salary when he retired, and would thereby receive an increased monthly retirement benefit.

The appellees responded to the appellant's complaint by filing a motion to dismiss under Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure* for failure to state a cause of action. After a brief hearing on the appellees' motion, on February 2, 1999 the circuit court entered an order dismissing the appellant's complaint.

In its dismissal order, the circuit court ruled that the 1989 amendment to *W.Va. Code*, 5-5-3 was not an unconstitutional impairment of the appellant's contract because it was not a "substantial impairment." The circuit court also concluded that *W.Va.Code*, 5-5-3 was a "salary statute, not a retirement statute"—and therefore, because the statute only affected the "terms and conditions of employment" and not the appellant's retirement, the State was not bound by constitu-

tional prohibitions regarding impairment of contracts.

The circuit court also concluded that the appellant's cause of action would not have survived the death of the appellant at common law, and therefore was bound by the "catch-all" 1-year statute of limitation contained in *W.Va.Code*, 55-2-12 [1959]. Because the appellant waited 19 months after retiring to file his complaint, the circuit court concluded that the action was barred by the 1-year statute of limitation. Additionally, the circuit court found that the doctrine of laches applied to the appellant's cause of action, and held that the cause of action was barred because the appellant waited 9 years to challenge the constitutionality of the Legislative amendment to *W.Va.Code*, 5-5-3 [1988].

The appellant then filed this appeal.

## II.

■ "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). We also review *de novo* a circuit court's decision to refuse to grant relief through an extraordinary writ of mandamus. Syllabus Point 1, *State ex rel. Anstey v. Davis*, 203 W.Va. 538, 509 S.E.2d 579 (1998).

■ When reviewing a circuit court's Rule 12(b)(6) dismissal order, we construe the factual allegations in the light most favorable to the plaintiffs. *State ex rel. McGraw v. Scott Runyan Pontiac-Buick*, 194 W.Va. at 775-76, 461 S.E.2d at 521-22. A circuit court should dismiss a complaint for failure to state a claim only where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Murphy v. Smallridge*, 196 W.Va. 35, 36, 468 S.E.2d 167, 168 (1996) (citations omitted). In other words:

---

**3.** Article III, section 4 of the *West Virginia Constitution* states:

The privilege of the writ of habeas corpus shall not be suspended. No person shall be held to answer for treason, felony or other crime, not cognizable by a justice, unless on presentment or indictment of a grand jury. No bill of attainder, ex post facto law, or law impairing the obligation of a contract, shall be passed.

The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46[, 78 S.Ct. 99, 2 L.Ed.2d 80] (1957). Syllabus Point 3, *Chapman v. Kane Transfer Co.*, 160 W.Va. 530, 236 S.E.2d 207 (1977).

With these standards in mind, we review the circuit court's dismissal order.

### III.

The appellant challenges the circuit court's February 2, 1999 dismissal order on essentially two grounds. First, the appellant contends that the circuit court erred in holding that the 1989 amendment to *W.Va.Code*, 5–5–3 [1988] was not an unconstitutional impairment of his employment contract. He contends that *W.Va.Code*, 5–5–3 [1988] conferred upon all state employees a contractual benefit in 1988, and that he relied, to his detriment, on the 1988 version of *W.Va.Code*, 5–5–3 by continuing his employment with the State. Accordingly, the appellant argues that by eliminating this benefit from the pension statutes in 1989, the Legislature unconstitutionally impaired his contract with the State.

Second, the appellant argues that his action to enforce his statutory rights was timely filed. The appellant contends that his case is governed by the 5– or 10–year statutes of limitation for contract actions, and that the circuit court was wrong in its conclusion that his case was barred by the one-year "catchall" statute of limitation. The appellant also asserts that he did not have legal standing to file this action until his 1996 retirement, and that even though he waited to file the action until after his retirement, no innocent third party will be unfairly prejudiced by the delay in filing if he is granted relief. The appellant

therefore argues that the equitable doctrine of laches does not apply to bar his case.

### A.

*Unconstitutional Impairment of Contract*

■ The statute under scrutiny in this case is *W.Va.Code*, 5–5–3 [1988]. Prior to 1988, the statute stated that when a State employee ended his or her employment due to "resignation, death, retirement or otherwise," the employee could elect to "be paid in a lump sum amount . . . for accrued and unused annual leave at the employee's usual rate of pay at such time." *See W.Va.Code*, 5–5–3 [1987]; *1987 Acts of the Legislature*, Ch. 107.

In 1988, the legislature amended *W.Va. Code*, 5–5–3 by providing that "such lump sum payment is to be a part of final average salary computation." This amendment gave state employees the option of adding the cash value of their accrued and unused annual leave into the formula for computing retirement benefits. *See 1988 Acts of the Legislature*, Ch. 100. The appellant in this case alleges that at the time of his retirement he had 320 hours of accrued annual leave, or an additional $6,622 that would have been included in his final average salary computation. At oral argument, counsel for the appellant represented that if the 1988 version of *W.Va.Code*, 5–5–3 is applied to his retirement pension, he will receive an additional $200 per month in retirement benefits.

The primary question raised by the appellant's complaint is whether the Legislature's 1989 amendment to *W.Va.Code*, 5–5–3 unconstitutionally impaired his employment contract with the State. The statute was amended in 1989 to state that "such lump sum payment may *not* be a part of final average salary computation," thereby effectively repealing the 1988 amendment to the statute. This statute, which took effect on July 8, 1989, remains in effect today.[4]

---

4. *W.Va.Code*, 5–5–3 [1989], which was in effect when the appellant retired in 1996 and remains in effect today, states (with emphasis added):

Every eligible employee, as defined in section one of this article, at the time his or her active employment ends due to resignation, death, retirement or otherwise, may be paid in

a lump sum amount, at his or her option, for accrued and unused annual leave at the employee's usual rate of pay at such time. The lump sum payment shall be made by the time of what would have been the employee's next regular pay day had his employment continued. In determining the amount of annual

In *Dadisman v. Moore*, 181 W.Va. 779, 384 S.E.2d 816 (1988), this Court examined the unique contractual relationship between the State and its employees regarding retirement benefits. We held in *Dadisman* that a public employee's rights under the State's statutorily-created pension system are contract rights. 181 W.Va. at 789-90, 384 S.E.2d at 826-827. More importantly, we held that those rights are constitutionally protected by our *Constitution. See W.Va. Const.*, art. III, § 4. *See also, U.S. Const.*, art I, § 10, cl. 1. We stated, at Syllabus Point 16 of *Dadisman*, that:

> Retired and active PERS [Public Employees Retirement System] plan participants have contractually vested property rights created by the pension statute, and such property rights are enforceable and cannot be impaired or diminished by the State.

In *Booth v. Sims*, 193 W.Va. 323, 456 S.E.2d 167 (1995), we clarified our holding from *Dadisman*, and held that if a state employee continues with their State employment, such that their employment decision is made in reliance upon the statutorily-provided pension benefits, then the State may not amend or alter the statutes creating the State's employee pension plan in a manner that is adverse to the employee. We held in Syllabus Point 19:

> The pension rights of *all* current state pension plan members who have substantially relied to their detriment cannot be detrimentally altered at all, and any alterations to keep the trust fund solvent must be directed to the infusion of additional money. "Detrimentally alter" means the legislature cannot reduce the existing benefits (including such things as medical coverage) of the pension plan or raise the contribution level without giving the employee sufficient money to pay the higher

contribution. Should the legislature seek to reduce certain advantages of a pension plan, it must offer equal benefits in their place as just compensation.

Our holdings in *Dadisman* and *Booth* do not in any way suggest that the *Constitution* prevents the legislature from ever changing the public employee pension statutes. The Legislature may alter the statutes as it sees fit, but any alterations must have a prospective effect, and cannot adversely affect the contractual rights of existing state employees who relied upon the statute to their detriment. As we held in Syllabus Point 21 of *Booth:*

> Although the legislature may augment pension property rights, the legislature cannot simply reduce a participating employee's pension property rights once it establishes the system unless the employee acquiesces in the change to the pension plan or unless the employee has so few years in the system that he or she has not detrimentally relied on promised pension benefits.

The Legislature may always increase the benefits to be received by a retiring state employee. However, if the Legislature attempts to reduce certain advantages of a pension plan in a way that affects current members of the plan, it must offer equal benefits in their place as just compensation.

In the instant case, the circuit court characterized the 1989 amendment to *W.Va.Code*, 5-5-3 as merely "restoring the statutory provisions [enacted in 1987] regarding the lump-sum payment of accrued annual leave." The circuit court found that the State was not prevented by the *Constitution* from eliminating a state employee's right to add accrued annual leave to the employee's final average salary for purposes of computing retirement

leave entitlement, weekends, holidays or other periods of normal, noncountable time shall be excluded, and no deductions may be made for contributions toward retirement from lump sum payments for unused, accrued annual leave, since no period of service credit is granted in relation thereto; *however, such lump sum payment may not be a part of final average salary computation;* and where any such deduction of employee contribution may have

been heretofore made, a refund of such shall be granted the former employee and made by the head of the respective former employer spending unit: Provided, That the superintendent of the department of public safety shall make deductions for retirement contributions of members of the department, since retirement benefits are based on cumulative earnings rather than period of service.

benefits. The circuit court reasoned that the protection against impairment of contracts found in the *Constitution* "has no relevance to an accrued annual leave statute that was in existence for only one year prior to its repeal[.]"

■ After careful comparison of the circuit court's holding to our holdings in *Dadisman* and *Booth,* we conclude that the circuit court's holding was in error and must be reversed. The length of time that a public employee pension statute was in effect is not the controlling factor in determining whether a subsequent statutory amendment has unconstitutionally impaired a public employee's contract.

■ The determinative factor, as we held in *Booth,* is whether the employee may be said to "have substantially relied to their detriment" on the statute. As we stated, in Syllabus Point 7 of *Booth:*

> [S]ubstantial employee participation in the system *does* create an employee's reliance interest in pension benefits. An employee's membership in a pension system and his or her forbearance in seeking other employment prevents the legislature from impairing the obligations of the pension contract once the employee has performed a substantial part of his or her end of the bargain and relied to his or her detriment.

In the instant case, the circuit court dismissed the appellant's complaint on a motion to dismiss, without taking any evidence. Without a record, we are unable to evaluate whether the appellant substantially participated in the public employee's retirement system, or whether the appellant relied to his detriment on the 1988 version of *W.Va.Code,* 5–5–3.

■ Two other findings contained in the circuit court's order merit attention. First, the circuit court found that if legislative action is directed towards the terms and conditions of employment, and has only an incidental effect on the pension benefits that public employees might ultimately receive, then constitutional prohibitions do not prevent the legislative action. The circuit court then concluded that *W.Va.Code,* 5–5–3 [1988] was directed towards the terms and condi-

tions of employment because it was a "salary statute, not a retirement statute"—and therefore, any amendment to the statute could not constitute a substantial impairment to the appellant's contract rights.

Having examined the language of *W.Va. Code,* 5–5–3 [1988] in its entirety, we believe that the circuit court's finding that the statute is a "salary statute, not a retirement statute" is without basis. The statute does not pertain to current employees—it explicitly sets forth how the State is to distribute a benefit to those employees whose "active employment ends due to resignation, death, [or] retirement[.]" Accordingly, any legislative action directed towards altering the benefits provided by *W.Va.Code,* 5–5–3 [1988] must have been performed within the bounds of the *Constitution.*

Second, the circuit court found, and the State continues to argue before this Court, that *W.Va.Code,* 5–5–3 [1988] was actually passed by the Legislature as part of the early retirement incentives package contained in *W.Va.Code,* 5–10–22c [1988]. A brief examination of the legislative history of these two statutes reveals that the statutes were introduced on different days and enacted as separate bills. While both bills were approved by the Legislature on the same day, March 12, 1988, the statutes were intended to operate independently of one another. The ability for eligible state employees to take advantage of the early retirement incentives package expired on December 12, 1988, while any state employee, whether retiring normally, quitting, dying or taking early retirement, could take advantage of the accrued annual leave provisions contained in *W.Va.Code,* 5–5–3 [1988]. We reject the position taken by the State, and on remand, the circuit court should consider *W.Va.Code,* 5–5–3 [1988] as an independent statute, and not as a part of the State's now-defunct early retirement incentives program.

### B.

### *The Complaint is not Time–Barred*

■ The circuit court concluded that the issues raised in the appellant's complaint

were barred by the statute of limitations and the doctrine of laches.

■■■ "The first step in analyzing any statute of limitation question is to determine the applicable statute." *Keesecker v. Bird*, 200 W.Va. 667, 682, 490 S.E.2d 754, 769 (1997). The circuit court concluded that a 1–year statute of limitation applied to the appellant's cause of action, and found that because the appellant had waited 19 months after retiring to file his complaint, that the cause of action was barred.

The appellee State argues that the appellant's cause of action is not for "breach of contract," but for "impairment of contract." The State therefore argues that the appellant's cause of action would not have survived death at common law, and as such is governed by the one-year "catch-all" statute of limitation contained in *W.Va.Code*, 55–2–12(c)[1959]. The statute states, in pertinent part:

> Every personal action for which no limitation is otherwise prescribed shall be brought: ... (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

The State argues that because the appellant waited 19 months after retiring to file his action, that the complaint is clearly barred by the 1–year statute of limitation.

The appellant takes the position that his cause of action is based in contract—and therefore, that the 5– or 10–year statute of limitation for contract actions applies. *W.Va. Code*, 55–2–6 [1923] states, in pertinent part:

> Every action to recover money, which is founded upon ... any contract other than a judgment or recognizance, shall be brought within the following number of years next after the right to bring the same shall have accrued, that is to say: ... if it be upon any other contract in writing under seal, within ten years; if it be upon an award, or upon a contract in writing, signed by the party to be charged thereby, or by his agent, but not under

seal, within ten years; and if it be upon any other contract, express or implied, within five years[.]

The appellant takes the position that, because his contract with the State was in writing in the form of statutes, that the 10–year statute of limitation applies.

■■■ In *Dadisman v. Moore, supra*, we repeatedly made clear that a public employee's statutory pension rights are contractual rights. "The terms of the trust contract are spelled out in the [public employees retirement system] statute." 181 W.Va. at 784, 384 S.E.2d at 821. Furthermore, "[a] statute is treated as a contract when the language and circumstances evince a legislative intent to create private rights of a contractual nature." 181 W.Va. at 789, 384 S.E.2d at 826. As discussed previously, we concluded that our public employees' retirement statutes are contract rights that are "enforceable and cannot be impaired or diminished by the State." *Dadisman*, Syllabus Point 19.

*W.Va.Code*, 55–2–6 [1923] clearly states that its time limitations are applicable to "[e]very action to recover money, which is founded upon ... any contract[.]" The public employee retirement statutes, including *W.Va.Code*, 5–5–3 [1988], constitute a contract, and the appellant's cause of action is an attempt to recover money "upon" that contract—whether or not the action is characterized as a "breach" or "impairment" of the contract. In other words, the appellant's cause of action is governed by the statutes of limitation for contract actions contained in *W.Va.Code*, 55–2–6 [1923]. Accordingly, we reject the State's argument that the 1–year statute of limitation applies, and find that the circuit court erred in dismissing the appellant's complaint on the basis of the 1–year statute of limitation found in *W.Va.Code*, 55–2–12(c)[1959].

While we conclude that the statutes of limitation for actions upon a contract found in *W.Va.Code*, 55–2–6 [1923] apply to the appellant's cause of action, we are unable on the existing record to determine whether the 5– or 10–year limitation period applies. Under either period, the appellant's action

would have been timely filed.[5] But because the parties have not fully briefed the intricacies and applicability of the language used in *W.Va.Code,* 55–2–6 [1923], we decline to rule further on this issue.

■ The second reason adopted by the circuit court for dismissing the appellant's complaint was the doctrine of laches. The court, without the basis of any record, felt that "dozens," "hundreds," and possibly "thousands" of employees would be prejudiced if the appellant was permitted to enforce his rights under *W.Va.Code,* 5–5–3 [1988]. The court concluded that:

> In the instant case, the plaintiffs waited nine years after W.Va.Code § 5–5–3 was amended to challenge its constitutionality.... Hundreds, if not thousands, of public employees have retired since the statute was amended in 1989. Dozens, if not hundreds, of public employees who took early retirement in 1988 in order to receive the benefit of the one-year change to W.Va.Code § 5–5–3. Those employees would be unfairly prejudiced by allowing the plaintiffs to take advantage of a repealed provision that was in effect during [the] early retirement program of which Adams consciously chose not to take advantage.

This "unfair prejudice" formed the basis for the circuit court's dismissal of the appellant's complaint on the ground of laches.

■ We established in Syllabus Points 2 of *State ex rel. Waller Chemicals, Inc. v. McNutt,* 152 W.Va. 186, 160 S.E.2d 170 (1968) that the doctrine of laches applies to a mandamus action such as that filed by the appellant, and that an unreasonable delay in bringing the action may bar relief:

> The extraordinary remedy of mandamus, though on the law side of the court, is limited as to time by the equitable doctrine of laches; and the burden of showing suffi-

cient excuse for what appears from the record to be an unreasonable delay in the assertion of a clear legal right through the remedy of mandamus rests upon the person asserting such right.

■ This Court has, however, consistently held that the passage of time alone is insufficient to invoke the doctrine of laches. Instead, the doctrine requires a showing that, by permitting a claim to go forward, some injustice or prejudice would occur to the defendant or an innocent third party as a result of the delay. As we stated in Syllabus Point 3 of *State ex rel. Waller Chemicals:*

> The writ of mandamus will be refused when the petitioner has unreasonably delayed his application for such writ and by reason of the delay the rights of the defendant or innocent third parties will be prejudiced by the issuance of the writ.

In the instant case, no record was developed before the circuit court. The State certainly did not demonstrate, nor did the circuit court find, that the appellant's delay prejudiced the rights of the State.[6] More importantly, aside from the circuit court's conclusory statements that "dozens," "hundreds," or "thousands" of public employees would be adversely affected if the appellant were allowed to assert his rights under *W.Va.Code,* 5–5–3 [1988], we find nothing to suggest that any past or present public employees would be prejudiced by the issuance of a writ of mandamus to the appellant. In fact, if the circuit court subsequently grants relief to the appellant, it would appear that former public employees similarly situated to the appellant would be *benefitted,* not prejudiced, by the receipt of additional retirement benefits.

Accordingly, we conclude that the circuit court erred in finding that the appellant's complaint was barred by the statute of limitation and the doctrine of laches.

---

5. "The second step in evaluating a statute of limitation question is to establish when the ... cause of action 'accrued.' " *Keesecker v. Bird,* 200 W.Va. at 683, 490 S.E.2d at 770. In the instant case, the appellant's rights would not have "accrued" until his retirement on December 31, 1996.

6. The State also did not demonstrate how the appellant's case would have been ripe for adjudication prior to his 1996 retirement. For instance, the appellant could have exhausted all of his leave time prior to retiring, or the Legislature could have enacted statutes to replace the 1988 version of *W.Va.Code,* 5–5–3 with the same or a comparable benefit.

## IV.

For the foregoing reasons, we reverse the circuit court's February 2, 1999 dismissal order and remand this case for further proceedings.

Reversed and Remanded.

Justice SCOTT did not participate in the decision of the Court.