797 S.E.2d 62

Edward E. HARRIS and Sandra
L. Harris, Plaintiffs Below,
Petitioners

v.

The COUNTY COMMISSION OF
CALHOUN COUNTY, Defendant
Below, Respondent

No. 16–0735

Supreme Court of Appeals of West Virginia.

Submitted: January 24, 2017

Filed: February 21, 2017

Orton A. Jones, Esq., Hedges, Jones, Whittier & Hedges, Spencer, West Virginia Counsel, for the Petitioners

Karen H. Miller, Esq., Joseph L. Amos, Jr., Esq., Adam K. Strider, Esq., Miller & Amos, Charleston, West Virginia Counsel, for the Respondent

Justice Ketchum:

The Circuit Court of Calhoun County has certified a question to this Court asking when a cause of action accrued for an alleged breach of contract by the County Commission of Calhoun County concerning the Commission's former employee, Edward E. Harris ("Harris"). Harris filed an action in the circuit court in which he alleged that errors committed by the Commission in deducting and contributing amounts for his coverage under the West Virginia Public Employees Retirement System ("PERS") and the West Virginia Public Employees Insurance Agency ("PEIA") adversely affected his retirement pay and his retirement health insurance benefits.[1]

According to Harris, the County Commission failed to timely enroll him in PERS and make payments to his retirement account. Harris also asserts that the Commission failed to timely enroll him in family PEIA health insurance coverage. Harris maintains that both errors reduced the retirement benefits he currently receives. The Commission contends that, inasmuch as the alleged errors occurred well before the five and ten year limits set forth in *W.Va. Code*, 55–2–6 [1923], regarding oral and written contracts respectively, Harris's action is barred by the statute of limitations.[2]

The question certified by the circuit court is as follows:

> Does the statute of limitations in an alleged breach of contract action against an employer for failure to timely enroll an employee in retirement benefits begin to run when the act breaching the contract occurs and the employee knows of the breach?

Ruling in favor of Harris, the circuit court answered the question in the negative: "The statute of limitations begins to run when the employee is subsequently damaged at retirement through the receipt of less advantageous retirement benefits than they would have received, had they been timely enrolled."

Upon review, we find the certified question and the answer provided by the circuit court rather broadly stated. Neither the question nor the answer specifically refer to PERS or PEIA. Consequently, as discussed below, this Court exercises its authority pursuant to the applicable standard of review to reformulate the question.

■ Viewing the issue more narrowly, this Court is of the opinion that a public employee's cause of action against his or her participating public employer for failure to properly enroll, deduct or contribute amounts required for the employee's participation and coverage under PERS or PEIA accrues when the errors take place, rather than at the time of the public employee's subsequent retirement. However, the five and ten year statute of limitations set forth in *W.Va. Code*, 55–2–6 [1923], for such a cause of action begins to run either when the errors take place or when the errors are first known or should have been known by the public employee, whichever occurs last.[3]

---

1. *See* the *West Virginia Public Employees Retirement Act, W.Va. Code,* 5–10–1 [1961], *et seq.,* and the *West Virginia Public Employees Insurance Act, W.Va. Code,* 5–16–1 [1990], *et seq.*

2. *W.Va. Code,* 55–2–6 [1923], provides that an action to recover upon a written contract shall be brought within ten years "next after the right to bring the same shall have accrued" and within five years upon an oral contract.

## I. Factual Background

In August 1987, Harris was hired by the County Commission as a custodian at the Calhoun County Courthouse. Harris worked on a full-time basis and was issued weekly paychecks. His employment with the Commission as a custodian was continuous until his retirement in December 2010. The County Commission was a participating political subdivision for purposes of PERS and PEIA enrollment, deductions and contributions concerning its employees.[4]

### Harris's PERS Enrollment

Harris's employment with the County Commission began on August 3, 1987. However, as the circuit court determined, his paychecks did not show a deduction for retirement until August 1988. The first deduction (set forth as "ret.") appears on Harris's August 19, 1988, paycheck. Until then, Harris's paychecks included the amounts he contends should have been paid to PERS.

Although the deductions began in August 1988, PERS records indicate the year 1989 as Harris's first year of credited service. The discrepancy between August 1988 and 1989 is unexplained. According to Harris, it was not

until January 1989 that the County Commission actually began sending "both the current employee and employer contributions" to PERS. Thus, Harris received no credit for service between August 1987 and December 31, 1988.

### Harris's PEIA Enrollment

The facts concerning Harris's enrollment in PEIA are convoluted. According to Harris, the County Commission gave its employees PEIA coverage as part of their compensation, and for several years, including the years 1987 and 1988, no insurance premiums were deducted from the payroll. However, although Harris's employment with the County Commission began on August 3, 1987, he contends that the Commission failed to enroll him at that time. It was not until August 1988 that Harris signed a PEIA enrollment form. As the circuit court found, PEIA records confirmed August 1988 as the date of Harris's continuous enrollment.

The August 1988 enrollment date is significant because Harris asserts that he would otherwise have been "grandfathered" into a more generous PEIA retirement plan only available to employees participating in the plan before July 1, 1988.[5]

---

**3.** Harris asserts there are unresolved fact questions regarding whether the Commission assured him throughout his employment that his PERS and PEIA enrollments, deductions and contributions were correct. He further asserts that he is functionally illiterate and neither knew nor should have known, until his retirement in 2010, of errors regarding his PERS and PEIA coverage. *See Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009) (discussing the "discovery rule" in the context of the statute of limitations). The Commission denies making such assurances to Harris and argues that Harris knew or should have known, early on, of any problems with the Commission's actions regarding his PERS and PEIA coverage. The Commission, for example, cites documents sent to Harris at regular intervals notifying him of the contributions made to PERS as well as his accumulated years of service. Those disputed fact questions, however, are not necessary to the resolution of the certified question before us and are for the circuit court to consider following the issuance of this Opinion.

**4.** Harris's wife, Sandra, was also hired by the County Commission as a custodian in August 1987. At some point, not specified in the appendix record, she left her employment with the Commission. Although Harris named Sandra in

electing family, rather than individual, PEIA health coverage, Sandra's employment with the County Commission is not relevant to the question before us.

**5.** *W.Va. Code*, 5–16–13(d) [2010], of the *West Virginia Public Employees Insurance Act*, in effect at the time of Harris's retirement, provided for the conversion of accrued annual and sick leave for extended insurance coverage upon retirement, but only for employees who elected to participate in the plan before July 1, 1988. Specifically, for a retired employee, his or her spouse and dependents, subsection (d) stated that the insurance coverage "shall continue one additional month for every three days of annual leave or sick leave, or both, which the employee had accrued as of the effective date of his or her retirement." A similar provision for conversion to extended insurance coverage is found in the former *W.Va. Code*, 5–16–12 [1986], in effect at the time Harris was hired by the County Commission.

However, although *W.Va. Code*, 5–16–13(e) [2010], also provides for the conversion to one additional month of coverage for every three days of annual leave or sick leave, that section includes a limiting component, *i.e.*, the employ-

Neither Harris nor his wife were significantly ill during 1987 and 1988, and Harris made no attempt to use PEIA insurance during that time. For reasons which are unclear, Harris signed a second PEIA enrollment form in January 1991. The form, entitled "PEIA Non-State Agency Enrollment Form," was signed by Harris on January 18, 1991.[6]

Harris retired on December 31, 2010, and began receiving retirement benefits.

## II. Procedural Background

On April 27, 2012, Harris filed a complaint in the circuit court against the County Commission.[7] Harris alleged breach of contract for the Commission's failure to enroll him in PERS and PEIA on his first day of employment in August 1987. According to Harris, the Commission made no deductions or contributions to PERS or PEIA on his behalf until late 1988 or January 1, 1989.

With regard to PERS, Harris alleged that, because he received no service credit for his employment from August 3, 1987, to December 31, 1988, his retirement pay was diminished, and he was deprived of accrued annual and sick leave for that period, which could have been added to his PEIA retirement benefits. Harris demanded that the County Commission be ordered to adjust his years and months of employment to reflect his true years of service for purposes of his retirement pay under PERS, or that judgment be entered against the Commission for the difference between what Harris currently receives in retirement pay and what he should receive with his true years of service being credited.

ee's annual leave or sick leave "shall be credited toward *one half* of the premium cost of the insurance"—for employees who elected to participate in the plan after July 1, 1988. (emphasis added)

6. Harris's PEIA coverage continued until his retirement, except for a period between July 1996 and May 1997. During that time, Harris's family finances were deficient, and he elected to change his PEIA status to no coverage so that the premium contribution would be added to his paycheck. His coverage was reinstated on May 7, 1997.

7. The County Commission was the sole defendant. The West Virginia Consolidated Public Retirement Board (PERS) and the West Virginia

As to PEIA, Harris alleged that the County Commission's failure to timely enroll him deprived him of the pre-July 1, 1988, opportunity of converting three days of accrued annual leave or sick leave to one additional month of paid-up coverage at retirement. *See* n. 5, *supra.* Moreover, Harris alleged that, upon his retirement, his paid-up PEIA premiums were for individual, rather than the family coverage to which he was entitled, thereby resulting in an additional premium for the coverage of Harris's wife, deducted from his retirement pay each month. In that regard, Harris demanded, *inter alia,* that the County Commission be ordered (1) to adjust the application of his accrued annual leave and sick leave from individual to family coverage and (2) to reimburse him for all sums deducted from his retirement pay which were applied to his wife's insurance coverage.[8]

In August 2015, the County Commission moved to dismiss the complaint pursuant to the five and ten year statute of limitations set forth in *W.Va. Code,* 55–2–6 [1923], regarding oral and written contracts. The Commission maintained that any alleged breach of contract regarding PERS and PEIA enrollment occurred no later than January 1, 1989, when the Commission began to make deductions and contributions on Harris's behalf. Thus, the Commission asserts that Harris's cause of action accrued at that time, rather than when he retired in 2010. The Commission asked the circuit court to dismiss the complaint as untimely.

On March 7, 2016, the circuit court entered a preliminary order granting the County Commission's motion to certify the statute of

Public Employees Insurance Agency (PEIA) were not included as defendants in the action.

Harris later filed a motion to amend the complaint, seeking to add a claim concerning the termination of his optional life insurance. The circuit court directed that the motion be held in abeyance. Consequently, Harris's amended complaint is not before this Court.

8. Harris alleged in the complaint that his accrued annual leave and sick leave, at the time of retirement, entitled him to full family health insurance coverage by PEIA at the rate of one month for three days of annual and/or sick leave, until the days of accrued leave become exhausted.

limitations question to this Court. In addition, the circuit court provisionally denied the Commission's motion to dismiss and, addressing the merits of the question, determined that Harris's complaint was timely filed, i.e., the complaint was filed within two years following Harris's retirement in 2010. Noting that Harris had no right to retire when the alleged breaches by the Commission occurred, the circuit court concluded that the elements of his cause of action were not present, and his cause of action did not accrue, until his retirement.[9]

On August 1, 2016, the circuit court entered a final order certifying the above question and the circuit court's answer to this Court.

### III. Standard of Review

■ The procedure to be followed in certified question cases is well-established. Pursuant to W.Va. Code, 58–5–2 [1998], a circuit court may, in its discretion, certify a question of law to this Court. The question is then processed by this Court under Rule 17 of the Rules of Appellate Procedure. As to the merits of the circuit court's preliminary resolution of the question, we held in syllabus point 1 of Gallapoo v. Wal–Mart Stores, Inc., 197 W.Va. 172, 475 S.E.2d 172 (1996): "The appellate standard of review of questions of law answered and certified by a circuit court is de novo." Accord syl. pt. 1, Master Mechanical Insulation, Inc. v. Simmons, 232 W.Va. 581, 753 S.E.2d 79 (2013); syl. pt. 1, Univ. Commons Riverside HOA v. Univ. Commons Morgantown, 230 W.Va. 589, 741 S.E.2d 613 (2013).

**9.** The circuit court stated in the March 7, 2016, order:

> The Court Finds and Concludes that a breach of contract action for failure to timely enroll an employee in PERS, in violation of a duty to timely enroll said employee in PERS, whether by law, agreement, an employee handbook policy or otherwise, accrues when all the elements of a cause of action accrues to the Plaintiff upon retirement from a participating employer, rather than when the failure to enroll the employee in PEIA and/or PERS occurs, or when the Plaintiff becomes aware of such failure; plaintiff had no right to retire in 1989 or earlier and only a required period of future employment could earn any such right.

■ Finally, relevant to the current matter, we note our authority to reformulate the question certified, where the question has not been framed by the circuit court to enable this Court to sufficiently address the applicable law. See syl. pt. 2, Martino v. Barnett, 215 W.Va. 123, 595 S.E.2d 65 (2004); syl. pt. 3, Kincaid v. Mangum, 189 W.Va. 404, 432 S.E.2d 74 (1993).

### IV. Discussion

As reformulated, the question before this Court is limited to public employees and concerns when a cause of action accrues against a participating public employer (and when the statute of limitations is triggered) for failure to properly enroll, deduct or contribute amounts required for the public employee's participation and coverage under PERS or PEIA.

PERS statutes in effect during Harris's initial employment required a participating public employer to file detailed statements of the service rendered by each employee, and each employee was entitled to be credited with his or her prior and contributing service. See W.Va. Code, 5–10–19 [1961], and W.Va. Code, 5–10–14(a) [1985]. Pursuant to W.Va. Code, 5–10–29(c) [1971], a participating public employer was required to make deductions from the compensation of each employee "on each and every payroll" and pay the deductions to the retirement system. An employer's own contributions to PERS were addressed under W.Va. Code, 5–10–31 [1970]. W.Va. Code, 5–10–33(b) [1963], provided for a declaration of delinquency where a participating public employer failed to

> Similarly, the Court Finds and Concludes that an action for breach of contract for failure by an employer to timely enroll an employee in PEIA coverage upon his employment in accordance with the employer's employment policy and assurances to the employee that he was so enrolled, whether by law, employer practice, assurance, agreement and contract, or employee handbook policy, or otherwise ... accrues when the Plaintiff is damaged by such breach upon retirement from a participating employer, when all the elements of his cause of action have accrued and exist, rather than when the failure is committed or the Plaintiff becomes aware of same.

make required payments to the retirement system.

As to the PEIA statutes then in effect, *W.Va. Code*, 5–16–13 [1974], provided for public employer contributions, including contributions from a county government, of such percentage of the cost of its public employees' insurance as the employer deemed "reasonable and proper." Under that statute, the employee's share of the cost was to be withheld from the employee's compensation and forwarded to PEIA. Moreover, *W.Va. Code*, 5–16–18 [1986], provided, generally, that, upon retirement, an eligible public employee could participate in the insurance program at his or her own expense, after the expiration of any coverage which had been extended by virtue of accrued annual leave or sick leave. At the time of Harris's retirement, the method of converting accrued annual and sick leave to extended insurance coverage, before and after July 1, 1988, was set forth in *W.Va. Code*, 5–16–13 [2010]. *See* n. 5, *supra*.

In the current matter, although Harris's paycheck deductions for PERS began in August 1988, his first year of credited service was 1989. He received no credit for service between his date of hire in 1987 and December 31, 1988. Moreover, it was not until August 1988 that Harris signed a PEIA enrollment form. PEIA records confirmed August 1988 as the date of Harris's continuous enrollment. According to Harris, that date was past the time he could have taken advantage of the enhanced conversion of accrued annual leave and sick leave to extended insurance coverage. In addition, he asserts that his premiums paid to PEIA were for individual coverage, rather than the family coverage he expected. Harris argues before this Court that his complaint was filed within the statute of limitations because his cause of action against the County Commission did not accrue until he attained the right to retire.

According to the County Commission, Harris's cause of action accrued when the alleged breaches by the Commission took place before 1989, rather than years later at Harris's

retirement, *i.e.*, Harris's cause of action is about information collected and transferred by the Commission to PERS and PEIA early in Harris's employment, not about benefit calculations subsequently made by PERS and PEIA based upon the information supplied. Furthermore, the Commission emphasizes that PERS and PEIA are not parties in this action.

In *Adams v. Ireland*, 207 W.Va. 1, 528 S.E.2d 197 (1999), a retired employee of this State filed an action in the Circuit Court of Kanawha County seeking mandamus relief and damages from the Consolidated Public Retirement Board. The action was filed in 1998, nineteen months after the employee retired and challenged a 1989 statutory amendment which stated that retiring State employees could only convert their accrued annual leave to a lump sum payment and could no longer apply such annual leave to increase their monthly retirement benefits. The retired employee asserted that he elected not to take early retirement in reliance on the prior version of the statute, which would have allowed him to add his accrued leave to his final average salary for purposes of calculating his retirement benefits. The circuit court ruled, *inter alia*, that the action was barred by a one-year statute of limitations.

In *Ireland*, this Court confirmed that a public employee's statutory pension rights are contractual rights governed by the five and ten year limits set forth in *W.Va. Code*, 55–2–6 [1923]. 207 W.Va. at 9, 528 S.E.2d at 205. Consequently, this Court held that the retired employee's action was not barred by the statute of limitations. As stated in *Ireland* in a footnote, the retired employee's rights "would not have 'accrued' until his retirement on December 31, 1996." 207 W.Va. at 10, n. 5, 528 S.E.2d at 206, n. 5.[10]

*Ireland* is very different from the current matter. In *Ireland*, the retired employee sought to compel the Consolidated Public Retirement Board to recalculate his retirement benefits based upon a prior statutory provision. Thus, *Ireland* concerned a legisla-

---

**10.** Language in a footnote generally should be considered *obiter dicta*, unnecessary to the decision in the case and not precedential. *See Mylan Lab. Inc. v. Am. Motorists Ins. Co.*, 226 W.Va.

307, 318, 700 S.E.2d 518, 529 (2010); *State ex rel. Medical Assurance of W.Va., Inc. v. Recht*, 213 W.Va. 457, 471, 583 S.E.2d 80, 94 (2003).

tive amendment, or alteration, to a statutorily-provided pension benefit, rather than, as here, the entry-level enrollment into the retirement system of a newly hired public employee by a participating county commission. Harris essentially maintains that he should have been enrolled in PERS and PEIA in 1987. Moreover, although Harris's actual enrollment in PEIA after July 1, 1988, placed him under a less generous provision in terms of the conversion of accrued leave to extended insurance coverage, that issue is also a fundamental question of enrollment.[11]

In short, the alleged errors cited by Harris occurred at the County Commission level in the first instance, and not from actions taken by the West Virginia Legislature or alleged mistakes committed by PERS or PEIA. As mentioned, PERS and PEIA are not parties in this action.

■ Syllabus point 2 of *Steeley v. Funkhouser*, 153 W.Va. 423, 169 S.E.2d 701 (1969), holds: "The general rule is that a statute of limitations commences to run on a cause of action when the right to institute an action thereon arises." *See State ex rel. Magun v. Sharp*, 143 W.Va. 594, 599, 103 S.E.2d 792, 796 (1958) ("The statute of limitations as to a cause of action commences to run at the time of the accrual thereof.") As explained in Vol. 31, Richard A. Lord, *Williston on Contracts* § 79:14. (4th ed. 2004):

The general rule governing the commencement of the running of the statute of limitations is that the statutory period is computed from the time when the right of action that the plaintiff seeks to enforce first accrued; ordinarily, in an action based on a contract, accrual occurs as soon as there is a breach of contract, with some courts qualifying this by stating that accrual occurs when the promisee discovers or should have discovered the breach, and others stating that accrual occurs upon breach, whether or not the promisee is then aware of the breach.

In *McKenzie v. Cherry River Coal & Coke Co.*, 195 W.Va. 742, 466 S.E.2d 810 (1995), this Court held that the lessors' claims in a coal lease dispute were barred by the ten year statute of limitations for written contracts under *W.Va. Code*, 55–2–6 [1923]. The lessors alleged that the coal lease was forfeited in 1974 and that the complaint, filed in 1981, was timely. However, this Court, in *McKenzie*, noted that the alleged forfeiture was based upon a number of contract breaches claimed by the lessors and known to them long before 1974. Finding the lessors' claims stale, this Court stated: "We have consistently held that the statute of limitations begins to run when the breach of contract occurs or when the act breaching the contract becomes known." 195 W.Va. at 749, 466 S.E.2d at 817.[12] *Accord Harris v. Jones*, 209 W.Va. 557, 562, 550 S.E.2d 93, 98 (2001).

---

11. In that context, *Booth v. Sims*, 193 W.Va. 323, 456 S.E.2d 167 (1995), is similar to *Ireland*. In *Sims*, State Troopers alleged impairment of contract rights where various statutory amendments (1) increased the monthly payroll deduction from their salaries, (2) limited the use of accumulated annual and sick leave in the determination of the Troopers' retirement benefits and (3) reduced the public safety retirement cost of living adjustment.
    In *Sims*, this Court granted the Troopers relief only as to the cost of living adjustment. Respondent Sims and all other respondents named in the action were officers or members of the Consolidated Public Retirement Board. This Court noted, in *Sims*, that, because public pensions are a lawful debt of the State, "the proper remedy for any *failure to pay a pension* is a mandamus action against the state treasurer and auditor." (emphasis added) 193 W.Va. at 340, 456 S.E.2d at 184. *Sims* did not involve an alleged failure by the Division of Public Safety to enroll the Troopers in the retirement system or a failure to make deductions or contributions.

12. In *McKenzie*, we made the following observation, relevant, by analogy, to the current matter:

> The [lessors] argue that the statute of limitations for breaches of a lease only begins to run when a forfeiture is "declared." Under this theory, a problem discovered in the first year of a twenty year lease, which is used to declare a forfeiture in the twentieth year of lease, would not have to be litigated for another ten years. This theory, if adopted, would extend the ten-year statute of limitations to the term of the lease (or last day when a forfeiture could be declared) plus ten years.

195 W.Va. at 749, 466 S.E.2d at 817. Here, for errors committed by the County Commission before 1989, the delay in filing the action until 2012 raises significant issues concerning the Commission's ability to defend against Harris's claims.

■ The above authorities result in the inexorable conclusion that Harris's cause of action accrued before 1989 when the alleged errors by the Commission were committed, rather than when Harris retired in 2010. The pre–1989 errors are amply shown in the appendix record through (1) copies of Harris's paychecks which reveal when Harris's retirement deductions began, (2) the PERS statements sent to Harris listing 1989 as his first year of credited service, and (3) PEIA enrollment forms signed by Harris, indicating circumstantially that he had not been enrolled prior thereto. With regard to PERS, a participating public employer was statutorily required to make deductions from the compensation of each public employee "on each and every payroll" and pay the deductions to the retirement system. Thus, the Commission is correct in its assessment that Harris's cause of action is about information collected and transferred by the Commission to PERS and PEIA early in Harris's employment, not about benefit calculations subsequently made by PERS and PEIA based upon the information supplied.[13] *See Alderson v. State of Oregon*, 105 Or.App. 574, 806 P.2d 142, 146 (1991) (The breaches, if any, were defendants' failures to follow the prescribed retirement contribution requirements, not their refusal to remedy those failures.).

It follows from what has been said that a public employee's cause of action against his or her participating public employer for failure to properly enroll, deduct or contribute amounts required for the employee's participation and coverage under PERS or PEIA accrues when the errors take place, rather than at the time of the public employee's subsequent retirement. However, the five and ten year statute of limitations set forth in *W.Va. Code*, 55–2–6 [1923], for such a cause of action begins to run either when the errors take place or when the errors are first known or should have been known by the public employee, whichever occurs last. *See McKenzie, supra.*

## V. Conclusion

The certified question having been answered, this matter is remanded to the Circuit Court of Calhoun County for further proceedings.

Certified Question Answered.

JUSTICE WORKMAN dissents and reserves the right to file a dissenting opinion.

Workman, J., dissenting:

I respectfully dissent to the majority opinion; I would have held that the trial court correctly determined that the statute of limitations in the instant case began to run when the employee was damaged at retirement through the receipt of less advantageous retirement benefits than he would have received if he had been timely enrolled.

While the majority opinion accurately recognizes the general rule that a statute of limitations begins to run on a contract claim when the breach occurs, a number of jurisdictions have adopted a much sounder approach, supportive of a modification of that rule where the specific issue involves failure to enroll an employee in a retirement system and resulting harm to the employee upon retirement. This approach utilizes principles directly supportive of the trial court's determination in the present case and addresses the concept of *accrual* of a cause of action for breach of contract within a particular context. In *State Employees' Association of New Hampshire, Inc. v. Belknap County*, 122 N.H. 614, 448 A.2d 969 (1982), for instance, a county had breached its obligation to enroll eligible employees in the retirement system and make the requisite contributions. In addressing a statute of limitations defense, the Supreme Court of New Hampshire reasoned that the statute of limitations on claims for failure to enroll eligible employees in a pension plan began to run on the dates eligible employees would have been *entitled to receive* pension payments, *not* on the dates

---

13. Noteworthy is the language expressed in syllabus point 4 of *Lipscomb v. Tucker County Comm'n*, 197 W.Va. 84, 475 S.E.2d 84 (1996), wherein this Court held: "A claim for unpaid wages under the West Virginia Wage and Payment Collection Act is a continuing claim, and,

therefore, a separate cause of action accrues each payday that the employer refuses to pay the wages claimed." *Accord Ingram v. City of Princeton*, 208 W.Va. 352, 356, 540 S.E.2d 569, 573 (2000).

they became eligible to be enrolled. Specifically, the court held "the trial court correctly determined that the six-year statute of limitations ... did not preclude all claims concerning the county's noncompliance. ..." 448 A.2d at 973. The court observed "benefits are payable only upon the death or retirement of a qualifying employee; they are not payable prior to these events." *Id.*

> [T]he statute of limitations does not begin to run until the time that the payments become due—the time of death or retirement. *Abbott v. City of Los Angeles*, 50 Cal.2d 438, 462–63, 326 P.2d 484, 499 (1958); *see* 4 Corbin on Contracts § 989, at 966–67 (1951); *cf. General Theraphysical, Inc. v. Dupuis*, 118 N.H. 277, 279, 385 A.2d 227, 228 (1978); *Blanchard v. Calderwood*, 110 N.H. 29, 35, 260 A.2d 118, 122 (1969). Thus, the six-year statute of limitations would bar only the actions of employees whose suits were not commenced within six years after their death or retirement.

*Id. see also California Teacher's Assn. v. Governing Bd.*, 169 Cal.App.3d 35, 214 Cal. Rptr. 777, 782 (1985) ("[T]eachers' entitlement to service credits would not accrue until retirement benefits became payable upon retirement and, since service credits are dependent in part upon employer contributions, teachers' right to compel District to make additional contributions to the Teacher's Retirement Fund, likewise accrues only upon retirement."); *State ex rel. Teamsters v. City of Youngstown*, 50 Ohio St.2d 200, 364 N.E.2d 18, 21 (1977) (holding right to receive benefits accrued when employee elected to retire; thus, applicable statute of limitations did not begin to run until that time).

In *Richey v. Borough*, 2015 WL 1650873 (D. Alaska April 14, 2015), the District Court encountered allegations of failure of a Borough to enroll employees in the Public Employees Retirement System. The District Court examined the *Belknap* reasoning, finding it "particularly on-point and persuasive" and "in accord with black-letter contract law." *Id.* at *3. Although the Borough argued "that the statute of limitations began to run on plaintiffs' claims each time the Borough

failed to make a PERS contribution on each plaintiff's behalf[,]" the District Court held that the "payment of such benefits is not due until an employee's death or retirement. ..." *Id.* Thus, the statute of limitations did not begin to run when the errors occurred or when the employees arguably should have been aware of such errors.

The court in *Richey* also noted, with approval, the dissenting opinion in *Jiricek v. Woonsocket School District*, 489 N.W.2d 348 (S.D. 1992). In *Jiricek*, a former school superintendent had brought an action against the school district seeking contribution to his public retirement fund. Although the majority found his action barred by a six-year statute of limitations, the dissenting opinion, by Justice Wuest, presented a comprehensive evaluation of the accrual of a cause of action for this type of breach of contract and the statute of limitations on such claims, concluding that "Jiricek's cause of action does not accrue for purposes of the statute of limitations until he elects to retire." *Id.* at 353 (Wuest, J., dissenting). The dissenting opinion further noted "[t]he majority opinion fails to acknowledge or address this persuasive authority." *Id.*

Although some cases do support the approach adopted by the majority opinion in this case,[1] the substantial number of jurisdictions which utilize the one for which I advocate are better-reasoned, more persuasive, and much fairer.

In the instant context, it is grossly unfair to punish the employee for the failure of a public employer to adhere to its legal obligation to make retirement contributions in a timely manner. This is especially aggravated in a situation such as the instant case, where the employee is an illiterate janitor who not only would be unaware of the employer's failure, but also who would not have any knowledge of the harm visited upon him by the employer's failure until such time as he seeks to retire. A panoptic evaluation of this issue compels the conclusion that the cause of action accrues when the benefits of the contract become due and owing; thus, the

---

1. *See, e.g., Bailey v. Shelby Cty.*, 2013 WL 2149734 (Tenn. Ct. App. May 16, 2013) (finding

statute of limitations bars claim where employees should have known of error prior to retirement).

statute of limitations should not begin to run
until that time.